UNITED STATES COLD STORAGE CORPORATION v. DETROIT BOARD OF ASSESSORS.

1. TAXATION—WAREHOUSEMEN—STORAGE OF FARM PRODUCTS—EXEMPTION—DAMAGES.

Warehouser made a prima facie showing in mandamus or prohibition proceeding of damage by defendant tax assessors by reason of the fact that they sought to tax certain farm products stored within plaintiff's warehouse, notwithstanding statutory exemption of such products, as being considered in transit, in that the parties storing them would store the products elsewhere (CL 1948, § 211.9, as amended by PA 1956, No 206).

2. SAME—ASSESSMENT OF FARM PRODUCTS—WAREHOUSEMEN—PARTIES.

Warehouser of farm products is a proper party to proceeding to test validity of assessment of farm products stored with it

REFERENCES FOR POINTS IN HEADNOTES

[1]  51 Am Jur, Taxation § 433.
[4]  51 Am Jur, Taxation § 495 et seq.
[5]  51 Am Jur, Taxation § 501.
[6]  50 Am Jur, Statutes §§ 219, 223, 224.
[7]  51 Am Jur, Taxation § 500 et seq.
[8]  35 Am Jur, Mandamus § 265; 42 Am Jur, Prohibition §§ 15, 40.

by others, where it asserts an economic burden even though the tax is placed upon its customers (CL 1948, § 211.9, as amended by PA 1956, No 206).

3. SAME—MANDAMUS—PROHIBITION—ASSESSMENT OF FARM PRODUCTS—IRREPARABLE INJURY.

Warehouser of farm products which it claimed defendant tax assessors sought unlawfully to assess for taxes was not barred from seeking mandamus or prohibition by provision of general property tax law barring use of the injunction as to assessments, since that provision has no application where the aggrieved party is faced with irreparable injury and the warehouser has no remedy by way of appeal from the levy of the tax (CL 1948, § 211.9, as amended by PA 1956, No 206; § 211.114).

4. SAME—EXEMPTION.

Whether a tax exemption is a profitable measure for the future interest of the State and county is a question for the legislature and not for the court.

5. SAME—EXEMPTION—UNIFORMITY.

The legislature's power over exemption from taxation is limited in its exercise in that it may not make clear and hostile discriminations between particular persons and classes, since the Constitution requires it to provide a uniform rule of taxation (Const 1908, art 10, § 3).

6. SAME—MOTIVES OF LEGISLATURE.

Tax legislation, enacted within the limits of the Constitution, may not be invalidated because of the supposed motives which induced it, since a court may not inquire into the knowledge, negligence, motives or methods of the legislature in enacting statutes pursuant to power conferred upon it (Const 1908, art 10, § 3).

7. SAME—FARM PRODUCTS—WAREHOUSES—CONSTITUTIONALITY.

Exemption from taxation of farm products for human or animal consumption as food while stored in public warehouses, passed by the legislature to encourage the flow of commerce into this State, is constitutional (Const 1908, art 10, § 3; CL 1948, § 211.9, as amended by PA 1956, No 206).

8. WAREHOUSEMEN—TAXATION OF EXEMPT FARM PRODUCTS—MANDAMUS—PROHIBITION.

Warehouser, not having an adequate remedy at law, may resort to mandamus or prohibition to stay irreparable damage resulting from the assessment for taxes of farm products for

human or animal consumption stored with it, notwithstanding provision of a statute exempting it from assessment (CL 1948, § 211.9, as amended by PA 1956, No 206; § 211.114).

9. COSTS—CONSTITUTIONAL LAW.

No costs are allowed in suit testing constitutionality of recently-enacted tax exemption statute (CL 1948, § 211.9, as amended by PA 1956, No 206; § 211.114).

EDWARDS, VOELKER and BLACK, JJ., dissenting.

Original petition by United States Cold Storage Corporation, a Delaware corporation, against Board of Assessors of the City of Detroit for writ of mandamus or prohibition to enforce the granting of statutory tax exemption. Detroit City Council added as party defendant. Submitted March 12, 1957. (Calendar No. 47,190.)   Writ of mandamus granted July 31, 1957.

*Dickinson, Wright, Davis, McKean & Cudlip* (*R. William Rogers* and *Fred W. Freeman*, of counsel), for plaintiff.

*Paul T. Dwyer*, Corporation Counsel, *Bert R. Sogge* and *Julius C. Pliskow*, Assistants Corporation Counsel, for defendant Board of Assessors.

SHARPE, J.   Petitioner, United States Cold Storage Corporation, seeks a writ of mandamus or prohibition to compel the board of assessors of the city of Detroit to comply with the provisions of subdivision 14 of section 9 of PA 1956, No 206.*

Petitioner shows that it owns and operates a warehouse in the city of Detroit; that in December, 1956, it had stored in its warehouse certain farm products; that respondent, in disregard of the exemptions noted in the above act, has included said farm products in its assessment roll; that on February 7,

---

* This act amended CL 1948, § 211.9 (Stat Ann 1950 Rev § 7.9).— REPORTER.

1957, the board of assessors of the city of Detroit wrote a letter addressed to the Michigan Warehousemen's Association, a copy of which reads as follows:

*"My dear Mr. Rosie:*
"We are informed that your president, Mr. William J. Lamping, is in Florida, therefore, this letter is addressed to your attention. Inasmuch as the subject of this letter will affect the clients of your warehouses, we are informing you that the board of assessors will disregard section 14* of PA 1956, No 206, which has primarily to do with the exemption of farm products regularly placed in the public dock, warehouse or port facility and that such farm products will be placed on the 1957 assessment rolls.

"Will you kindly notify your members should you regard it advisable.

"Very truly yours,
"Board of Assessors
"/s/ Homer R. Marson,
"Assessor"

and that irreparable damage will be done to petitioner's business and profits unless the board of assessors is prevented from placing such stored farm products upon its assessment roll.

Upon the filing of the above petition with the clerk of the Supreme Court, an order to show cause and temporary restraining order was entered. The order recited the following:

"Now, therefore, it is ordered that respondent be, and it hereby is, directed to show cause before this Court at the State Capitol building, Lansing, Michigan, on February 28, 1957, at 10 o'clock in the forenoon of said day, why the prayers of said petition as hereinabove recited should not be granted.

"It is further ordered that the validity of any assessments or attempted assessments of farm products now declared exempt by subdivision fourteenth

---

* *i. e.,* subdivision 14 of the amended section 9.—Reporter.

of section 9 of PA 1956, No 206 and any subsequent proceedings predicated upon any such assessments or attempted assessments, including, but not by way of limitation, the filing of any tax roll incorporating any such assessments or attempted assessments with the common council of the city of Detroit, are subject to the further order of this Court."

The board of assessors filed an answer to the petition for a writ of mandamus or prohibition, a part of which reads as follows:

"Further answering however it is denied that any personal property tax is levied in Detroit upon stored farm products as a class either by respondent or anyone authorized to levy taxes therein; that under the general property tax act above mentioned an annual ad valorem nondiscriminatory property tax is levied by the city, the county and the board of education against all real and personal property, therein based upon assessments made as of January 1 of each year in the city of Detroit by its board of assessors. * * *

"Further answering respondent avers, on the advice of the corporation counsel of Detroit, that it has placed on the respective personal property rolls, together with other properties subject to assessment for 1957 in said city, such farm products processed or otherwise, the ultimate use of which is for human or animal consumption as food regularly placed in storage—except where application for exemption has been claimed on the ground that same are intended for shipment out of Michigan subject to and in accordance with the conditions of subdivision 12 of said amendment to section 9.

"Such action is based on respondent's determination pursuant to advice of counsel and its belief that:

"(1) 'judicial construction of Act 206 is deemed necessary to provide constitutional and uniform application of the tax laws of this State.'

"(2) and that subdivision 14 of section 9 of PA 1956, No 206 is repugnant to and in violation of the Constitution of the State of Michigan (1908), article 10, § 3.

"(3) and that subdivision 14 duplicates and must be read in conjunction with subdivision 12.

"Further answering respondent avers that such assessments have not been made against petitioner herein and the latter is not affected by nor required to pay the tax based upon such assessments referred to in its petition.

"8. While admitting the allegation in paragraph 8 as to the sole remedy existing and the several requirements for review and suit for recovery of tax paid under protest by affected taxpayers, respondent nevertheless denies that same is lengthy, costly and vexatious; further it neither admits nor denies that the cost of pursuing such remedy is prohibitive, for lack of sufficient information as to the identity or financial position of petitioner's several customers, and for the further reason that no complaint has been filed to date hereof by any of the latter concerning such assessments or their right of exemption as owners of farm products as defined in subdivision 14 and petitioner is accordingly left to its proofs.

"Further answering, respondent avers that lawful procedures and opportunity for complaint, review and appeal together with a specific remedy at law are available to such taxpayers. That the charter (ch 2, title 6) of the city of Detroit, its ordinances 375–E and 935–E and section 53 of the general property tax act (CL 1948, § 211.53 [Stat Ann 1950 Rev § 7.97]) afford an exclusive and sufficient remedy to those aggrieved by assessments of property in this city including owners of farm products as defined in subdivision 14 and which may have been assessed by respondent. * * *

"Further respondent says no clear right to any relief is set forth by the petition; neither do the alleged actions of respondent constitute a clear violation of any duty to petitioner.

"Finally answering, respondent says that the re-
lief prayed herein is repugnant to and in violation
of section 114 of the general property tax act (CL
1948, § 211.114 [Stat Ann 1950 Rev § 7.168]) which
reads:

"'No injunction shall issue to stay proceedings
for the assessment or collection of taxes under this
act.'"

Following the filing of the above answer, the board
of assessors filed a motion to dismiss petitioner's
petition as follows:

"Now comes the board of assessors of the city of
Detroit, respondent in the above entitled cause, by
its attorneys Paul T. Dwyer, corporation counsel,
and Bert R. Sogge and Julius C. Pliskow, assistants
corporation counsel, and moves this Court to dismiss
the petition for writ of mandamus or prohibition, for
the following reasons:

"1. The petition does not state grounds for juris-
diction to be taken by the Court of the parties or
the subject matter.

"2. The petition does not allege clear, ascertain-
able and uncontradicted facts upon which a clear
determination of undoubted right to relief can be
made.

"3. Petitioner is not a proper or interested party,
not being affected by the provisions of section 9, subd
14 of PA 1956, No 206.

"4. The petition asks the Court to enjoin an assess-
ment or tax collection under the general property tax
act contrary to section 114 thereof (CL 1948, § 211.-
114 [Stat Ann 1950 Rev. § 7.168]).

"5. The petition asks this Court to take summary
jurisdiction in a matter where an adequate and ex-
clusive remedy at law has been provided by stat-
ute."

On March 6, 1957, petitioner filed a petition to
add the common council of the city of Detroit as an

additional party respondent for the following reasons:

"1. Both respondent and the common council, sitting as a board of review, are administrative boards of the city of Detroit.

"2. Under the provisions of Ordinance 375–E of the city of Detroit, the common council is authorized to hear and determine appeals of persons aggrieved by any assessment made by the board of assessors and to correct any errors which it may discover in the assessment rolls during the period not less than 5 days or exceeding 16 days subsequent to the first Monday in March of each year.

"3. The common council is now a proper party to these proceedings.

"4. This motion is made, not only because the common council is now a proper party to these proceedings, but primarily to eliminate any possible claim by the city of Detroit that the common council is a necessary party in order to afford the relief prayed for in the petition now on file with this Court.

"This motion is further based on the files and records in this cause."

The common council of the city of Detroit did not contest the adding of it as a party respondent and adopted all of the grounds presented in the motion to dismiss filed by the board of assessors of the city of Detroit.  An order was entered in the Supreme Court adding the common council as a party respondent.

In its motion to dismiss, the board of assessors urges that the petition does not state grounds which warrant jurisdiction being taken by the Court of the parties or the subject matter, in that no actual controversy is alleged between petitioner and respondents, only disagreement as to the board of assessors' determination and acts as same affect customers placing farm products in petitioner's storage facil-

ities.   We note that petitioner alleges that the actions of the board of assessors in seeking to tax the farm products will cause it irreparable damage in that parties will store their farm products elsewhere. We are of the opinion that petitioner has made a prima facie showing of damage by reason of the fact that the board of assessors seeks to tax such stored farm products.

It is also urged that petitioner is not a proper or interested party as it is not affected by the provisions of PA 1956, No 206, §.9, subd 14.   We note that petitioner asserts that the board of assessors unlawul assessment of farm products stored in its warehouse places it under an economic burden even though the tax is placed upon its customers.   We are not in accord with the board of assessors' claim.   This issue was decided in *National Bank of Detroit* v. *Department of Revenue,* 334 Mich 132.

The board of assessors also urges that the Court should not take jurisdiction of the cause as petitioner has an adequate remedy at law.   It is conceded that the provisions of the general property tax act (CL 1948, §.211.114 [Stat Ann 1950 Rev § 7.168]), has no application where the aggrieved party is faced with irreparable injury, see *Haggerty* v. *City of Dearborn,* 332 Mich 304.   It must also be conceded that petitioner has no adequate remedy at law as it cannot protest the tax as its customers can.   It has no remedy by way of appeal.   The motion to dismiss is denied for the reasons above stated.

In its answer to the petition for writ of mandamus or prohibition the board of assessors urges that subdivision 14 of section 9 of PA 1956, No 206, is repugnant to article 10, § 3 of the Michigan Constitution of 1908.   The basis for the general property tax in Michigan is found in article 10, § 3 of the Constitution of 1908 which reads as follows:

"The legislature shall provide by law a uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law: Provided, That the legislature shall provide by law a uniform rule of taxation for such property as shall be assessed by the State board of assessors, and the rate of taxation on such property shall be the rate which the State board of assessors shall ascertain and determine is the average rate levied upon other property upon which ad valorem taxes are assessed for State, county, township, school and municipal purposes."

Implementing the constitutional mandate, the legislature enacted PA 1893, No 206, known as the general property tax act (CL 1948, § 211.1 [Stat Ann 1950 Rev § 7.1]) states:

"Sec. 1. That all property, real and personal, within the jurisdiction of this State not expressly exempted, shall be subject to taxation."

The charter of the city of Detroit of 1918 revised to January 1, 1956, title 6, ch 2, § 1, provides:

"All real and personal property within the city subject to taxation by the laws of this State shall be assessed at its true cash value by the board of assessors herein provided. Assessments shall be made according to assessment districts, the boundary lines of which shall conform to ward boundaries as established from time to time by the common council. There shall be an assessment roll in book form for each such district. All taxes upon personal property may be assessed in any district, whether the person assessed is a resident of such district or not."

The basis of the board of assessors' challenge is that the quoted act does not operate uniformly.

In *Board of Supervisors of Chippewa County* v. *Auditor General,* 65 Mich 408, we held that whether a tax exemption would be a profitable measure for

the future financial interest of the State and county was a question for the legislature and not for the court.

In *Citizens' Telephone Company of Grand Rapids v. Fuller,* 229 US 322 (33 Sup Ct 833, 57 L ed 1206), the court had under discussion PA 1909, No 49, which exempted telegraph and telephone companies whose gross receipts within Michigan did not exceed $500 during the period of a year. It was there said (pp 328, 329, 331, 332):

"In Michigan the legislature has the power of prescribing the subjects of taxation and exemption, notwithstanding the Constitution of the State requires the legislature to provide a uniform rule of taxation, except on property paying specific taxes. *People, ex rel. St. Mary's Falls Ship Canal Co.,* v. *Auditor General,* 7 Mich 84; *Chippewa County Supervisors* v. *Auditor General,* 65 Mich 408; *National Loan & Investment Co.* v. *Detroit,* 136 Mich 451. The power of exemption would seem to imply the power of discrimination, and in taxation, as in other matters of legislation, classification is within the competency of the legislature. We said in *American Sugar Refining Co.* v. *Louisiana,* 179 US 89, 92 ( 21 S Ct 43, 45 L ed 102, 103), that from time out of mind it has been the policy of this government to classify for the purpose of taxation, and a discrimination was supported between taxation of producers and manufacturers of products; and yet in *Billings* v. *Illinois,* 188 US 97, 102 (23 S Ct 272, 47 L ed 400, 403), we compared the rule with that in *Connolly* v. *Union Sewer Pipe Co.,* 184 US 540 (22 S Ct 431, 46 L ed 679) where a distinction between buyers of products and the producers of them was held an illegal discrimination.

"It may therefore be said that in taxation there is a broader power of classification than in some other exercises of legislation. There is certainly as great a power, and the rule appellant urges cannot be adopted. It is inconsistent with the principle of clas-

sification and the cases which have explained the principle and the range of its legal exercise.  \* \* \*

"They illustrate the power of the legislature of the State over the subjects of taxation and the range of discrimination which may be exercised in classifying those subjects when not obviously exercised in a spirit of prejudice and favoritism. *Cook* v. *Marshall County, Iowa,* 196 US 261, 274 (25 S Ct 233, 49 L ed 471, 474); *Missouri* v. *Dockery,* 191 US 165 (24 S Ct 53, 48 L ed 133, 63 LRA 571). The cases decided subsequent to the decision in *Bell's Gap R. Co.* v. *Pennsylvania* (134 US 232, 237 [10 S Ct 533, 33 L ed 892, 895]) have applied its principle to many varying instances. Granting the power of classification, we must grant government the right to select the differences upon which the classification shall be based, and they need not be great or conspicuous. *Keeney* v. *Comptroller of the State of New York,* 222 US 525, 536 (32 S Ct 105, 56 L ed 299, 305, 38 LRA NS 1139). The State is not bound by any rigid equality. This is the rule;—its limitation is that it must not be exercised in 'clear and hostile discriminations between particular persons and classes.' See *Quong Wing* v. *Kirkendall,* 223 US 59, 62, 63 (32 S Ct 192, 56 L ed 350). Thus defined and thus limited, it is a vital principle, giving to government freedom to meet its exigencies, not binding its action by rigid formulas, but apportioning its burdens, and permitting it to make those 'discriminations which the best interests of society require.'

"We think the statute under review is within the rule. It is not arbitrary. It has a reasonable basis, resting on a real distinction."

We do not find that the enacted legislation came into existence in a "spirit of prejudice and favoritism." The question of the economic advantages to be obtained by exemptions is a matter pertaining to the legislature.

In *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich 659, 681, it was stated:

"We may not inquire into the motives which actuated the legislature in the exercise of its taxing power. Tax legislation enacted within the limits of the Constitution may not be invalidated because of the supposed motives which induced it. *United States* v. *Doremus*, 249 US 86 (39 S Ct 214, 63 L ed 493). We may not inquire into the knowledge, negligence, motives or methods of the legislature if the statute was regularly enacted in pursuance of power conferred upon the legislature by the Constitution. *Calder* v. *State of Michigan, ex rel. Attorney General*, 218 US 591 (31 S Ct 122, 54 L ed 1163)."

In *People* v. *Gibbs*, 186 Mich 127, 134, 135 (Ann Cas 1917B, 830), this Court stated:

"Courts are not concerned with the motives which actuate members of a legislative body in enacting a law, but in the results of their action. Bad motives might inspire a law which appeared on its face and proved valid and beneficial, while a bad and invalid law might be, and sometimes is, passed with good intent and the best of motives."

We conclude that the act in question was passed by the legislature to encourage the flow of commerce into Michigan and that the act is constitutional. We also hold that petitioner, not having an adequate remedy at law, may resort to mandamus or prohibition to stay irreparable damage.

The writ of mandamus will issue, but without costs as a constitutional question is involved.

DETHMERS, C. J., and SMITH, KELLY, and CARR, JJ., concurred with SHARPE, J.

EDWARDS, J. (*dissenting*). My Brother has set out such facts as are before this Court in this matter.

We are required on petitioner's application for writ of mandamus or prohibition to determine whether or not subdivision 14, § 9, PA 1956, No 206 (CL

1948, § 211.9, as amended [Stat Ann 1957 Cum Supp § 7.9]), is consistent with article 10, § 3, of the Constitution of 1908.

The statutory provision at issue is as follows:

"Fourteenth, Farm products processed or otherwise, the ultimate use of which is for human or animal consumption as food, but expressly excepting wine, beer and other alcoholic beverages, regularly placed in storage in a public warehouse, dock or port facility, as defined in the twelfth subdivision of this section, shall, while so in storage be considered in transit and only temporarily at rest, and not subject to personal property taxation: Provided, That the assessing officer shall be the determining authority as to what constitutes, is defined as, or classified as, farm products as used in this subdivision: Provided, That all records, accounts and books of warehouses, docks or port facilities, individuals, copartnerships, corporations, owners, or those in possession of any farm products shall be open to and available for inspection, examination and/or auditing by assessing officers."

It appears that the plain intent of the legislature in the quoted language is to exempt from personal property taxation such farm products, as defined above, as are found in public warehouses in the State of Michigan on tax date, regardless of whether such products are destined for use inside or outside the State of Michigan, or whether such destination is unascertained at the time.

The constitutional provision previously quoted by my Brother in full reads, in part, as follows:

"The legislature shall provide by law a uniform rule of taxation, except on property paying specific taxes."

Two questions of moment are presented by the taxation amendment currently under consideration.

The first is whether or not it represents an exemption of a classification of property, which exemption is within the constitutional power of the legislature to grant. The second question is whether or not the statute represents a proper general classification of property for purposes of exemption.

We recognize, as my Brother suggests, that the legislature in Michigan has been held, since the early history of the State, to have the constitutional authority to grant exemptions to general classes of property or business where such exemptions are "discriminations which the best interests of society require." *Citizens' Telephone Company of Grand Rapids* v. *Fuller,* 229 US 322, 331 (33 S Ct 833, 57 L ed 1206) ; *Board of Supervisors of Chippewa County* v. *Auditor General,* 65 Mich 408. The writer does not, however, believe it is necessary for us to answer whether or not the present legislation would fit within such power of exemption as has been previously defined in case law. The record before us does not disclose uniform treatment of any general classification of property. The property which it purports to exempt is neither all of the personal property stored in all public warehouses, nor all farm products as defined by the statute stored wherever they might be stored on tax date.

On the contrary, the statute plainly discriminates between farm products stored in public warehouses and other personal property likewise stored there, granting exemption to the former and not to the latter. It likewise discriminates between farm products held in privately-owned storage facilities and farm products stored in public warehouses.

Classification based upon location of property has repeatedly been held discriminatory. *Teagan Transportation Co.* v. *Detroit Board of Assessors,* 139 Mich 1.

1 Cooley on Taxation (4th ed), p 594, has this to say on our current point:

"Classification for exemption purposes may be based on the use to which property is devoted, as well as the nature of the property; but property cannot be exempted merely because of its ownership where the same kind of property owned by others is taxed, nor according to its location."

*Carolina National Bank of Columbia* v. *Spigner,* 106 SC 185 (90 SE 748) ; *Martin* v. *Reynolds,* 125 Ark 163 (188 SW 4).

On page 723 of the same work, Cooley continues:

"The rule allowing classification for purposes of taxation is always coupled with the proviso 'if all of the same class are taxed alike.' Discrimination between persons or property in like situation cannot be effected by classification, since there can be no reason therefor. Omissions from a class, of subjects that clearly belong to such class, makes the classification invalid."

In the case principally relied upon by my Brother, *Citizens' Telephone Company of Grand Rapids* v. *Fuller, supra,* the legislature was held to have the power of prescribing the subjects of taxation and exemption, notwithstanding the constitutional uniformity rule. The classification involved in that case, however, was uniform.

On the point of uniformity of classification, petitioner relies primarily upon a New Jersey case, *Schwartz* v. *Essex County Board of Taxation,* 129 NJL 129 (28 A2d 482). This case construed and upheld the constitutionality of a statute designed to affect personal property in public warehouses. Two important distinctions, however, may be found between the situation presented to that court in that case and that with which we are here confronted. First, evidence was available that, in 2 States im-

,mediately neighboring, personal property was exempt from taxation and, hence, such warehouses in New Jersey were operating at a great competitive disadvantage. No such fact is presented in the record- before us. Secondly, it is noteworthy that the New Jersey statute* reads as follows:

"All personal property stored in a warehouse of any person, copartnership or corporation engaged in the business of storing goods for hire shall be exempt from taxation under this chapter,"

thereby plainly exempting all of the class of personal property stored in any public warehouse on the tax date in question. As previously noted, the instant statute under consideration discriminates between classes of personal property stored in public warehouses and exempts only farm products as defined in the act.

My Brother concludes his opinion as follows:

"We conclude that the act in question was passed by the legislature to encourage the flow of commerce into Michigan and that the act is constitutional."

Nothing in this record supports this conclusion. If it could be held that such a conclusion might be presumed on the general rule that all reasonable presumptions favoring constitutionality of legislation may be made, *Allen* v. *State Highway Commissioner,* 338 Mich 407; *Rohan* v. *Detroit Racing Association,* 314 Mich 326 (166 ALR 1246), why then, on the general basis of encouraging flow of commerce into Michigan, discriminate against all other commerce, except farm products as defined, stored in public warehouses on the tax date?

On the showing on the record before us, we hold that the classification contemplated would patently be discriminatory as between the owners of personal

---

* NJSA, § 54:4–3.20.—Reporter.

property in the classifications previously referred to and, hence, that the statute is unconstitutional because of its violation of the requirements of uniformity previously described.

Petition for writ of mandamus or prohibition should be denied, but without costs, a constitutional question being involved.

VOELKER and BLACK, JJ., concurred with EDWARDS, J.