FROST-PACK DISTRIBUTING COMPANY v CITY OF GRAND
RAPIDS

OPINION OF THE COURT

1. TAXATION—CLASSIFICATION—EXEMPTIONS.

The Legislature has the power to classify subjects for the pur-
poses of taxation, and also the power to create, grant, and deny
exemptions from taxation.

2. TAXATION—CLASSIFICATION—DISCRIMINATION.

The validity of a statutory tax classification is not reviewed by
looking at one factor, but proceeds on the question of whether
there is a clear and hostile discrimination between the particu-
lar persons and classes.

3. TAXATION—PROPERTY TAX CLASSIFICATION—FARM GOODS—WARE-
HOUSES.

A property tax classification which distinguishes farm products
stored in "public" warehouses from farm products stored in
owned or affiliated warehouses, for exemption purposes, is
neither hostile nor arbitrary where the Legislature may have
determined that in most cases farm products are perishable
and that when placed in a public warehouse it is the usual
intent of the owner to ship such products within a short period
of time, and where it may also be the case that farm products
would usually be placed in a warehouse owned, controlled by,
or affiliated with the owner of the products to await ripening or
some other economically beneficial change before the sale is
attempted and shipment intended because the owner of the
product would usually want to maintain some control over the
chemical processes which affect his agricultural commodity and
it may not be the usual business of public warehouses to

REFERENCES FOR POINTS IN HEADNOTES
[1–5, 11] 51 Am Jur, Taxation §§ 23–38, 495–499.
[6] 50 Am Jur, Statutes §§ 238, 239.
[7, 10] 67 Am Jur 2d, Sales § 278.
[8, 9] 51 Am Jur, Taxation § 135.
[12] 4 Am Jur 2d, Appeal and Error § 2.

supervise goods in their care, and where differentiation on a case-by-case basis as to the "true purpose" for which goods are stored in an owned or affiliated warehouse would place an intolerable burden on taxing authorities (MCLA 211.9[12], [14]).

4. TAXATION—CLASSIFICATION—ADMINISTRATIVE EXPENSE—CONVE-
    NIENCE.

Legislative action has ordinarily been upheld where administrative expense or convenience was a factor in establishing a tax classification.

5. TAXATION—WAREHOUSES—EXEMPTIONS—DISCRIMINATION.

The validity of a taxing statute is upheld where there is found a rational basis for distinguishing between warehouses for exemption purposes and no clear hostile discrimination.

6. STATUTES—CONSTRUCTION—COMMON USAGE—PECULIAR MEANING.

Courts are directed to construe statutory language according to the common usage of the terms except where they have acquired a peculiar meaning in the law (MCLA 8.3).

7. WORDS AND PHRASES—CONSIGNOR—DEFINITION.

The term "consignor" has not acquired a meaning understood by all segments of the business community.

8. TAXATION—STATUTES—IMPOSITION PROVISIONS—EXEMPTION PROVI-
    SIONS—CONSTRUCTION.

Imposition provisions of a taxing statute are construed in favor of the taxpayer while exemption provisions must be strictly construed in favor of the taxing agency.

9. TAXATION—EXEMPTION STATUTE—CONSIGNOR—DEFINITION.

The term "consignor", as used in a property tax exemption statute, encompasses more than entrustment for shipment; it includes delivery of goods for care or storage (MCLA 211.9[12]).

DISSENT BY O'HARA, J.

10. WORDS AND PHRASES—CONSIGNOR—CONSIGNEE—DEFINITION.

*A consignor, in ordinary usage, is one who places property in transit via a certificated carrier pursuant to a published tariff; if a product is committed to shipment and placed in a warehouse under a freight bill so as to entitle it to transportation rate privileges the owner by most known usage becomes a "consignor" and the one to whom the shipment is consigned is the consignee (MCLA 211.9[12]).*

11. TAXATION—PERSONAL PROPERTY—EXEMPTION—CONSIGNOR—CON-
    SIGNEE.

> *Plaintiff owner of farm products which stored them in a public
> warehouse operated by a wholly-owned subsidiary of plaintiff,
> paying the same rate as other customers, and which did not
> designate the goods as in transit to destinations out of state
> pursuant to the published tariffs of any common carrier nor file
> freight bills covering the products with any agency designated
> by such tariffs, was neither a consignor nor a consignee of the
> products within the meaning of the statute exempting farm
> products stored in a public warehouse from personal property
> tax but excluding from the definition of public warehouse any
> portion of the warehouse operated by a subsidiary of a con-
> signor or consignee (MCLA 211.9[12], [14]).*

12. APPEAL AND ERROR—QUESTIONS DECIDED—CASE LAW.

> *Appellate courts do not adjudicate questions not raised, argued,
> and briefed in the court below, and an opinion which declines
> to adjudicate a particular question because it was not so raised,
> argued, and briefed is not decisionally relevant in a later case
> in which the question is raised.*

Appeal from Kent, George V. Boucher, J. Sub-
mitted Division 3 October 4, 1973, at Grand Rap-
ids. (Docket No. 16044.) Decided April 29, 1974.
Leave to appeal granted, 392 Mich —.

Complaint by Frost-Pack Distributing Company
against the City of Grand Rapids for recovery of
1968 personal property taxes paid under protest.
Summary judgment for defendant. Plaintiff ap-
peals. Affirmed.

*Clary, Nantz, Wood & Van Orden,* for plaintiff.

*George A. Weible,* City Attorney, and *Philip A.
Balkema,* Assistant City Attorney, for defendant.

Before: HOLBROOK, P. J., and BASHARA and
O'HARA,* JJ.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

BASHARA, J. This appeal arises from an order of summary judgment granted by the Kent County Circuit Court to defendant city. By so ruling the court affirmed a holding of the State Tax Commission denying to plaintiff its claimed exemption from the personal property tax levied by the city upon certain farm products stored in a warehouse. Plaintiff is the parent corporation of a wholly owned subsidiary which operates the warehouse. The case was submitted to the trial judge on an agreed statement of facts which will be drawn upon as our discussion requires.

The Court is faced with two primary issues which will be dealt with seriatim.

I.

*Does the exclusionary language in the definition of a public warehouse of MCLA 211.9(12); MSA 7.9(12) constitute an unreasonable and arbitrary legislative act of classification for tax purposes, thereby rendering the provision invalid and unconstitutional?*

MCLA 211.9(12); MSA 7.9(12), as amended by 1964 PA 275,[1] provides in relevant part:

"The following personal property shall be exempt from taxation, to wit:

* * *

"Twelfth, All products, materials and/or goods processed or otherwise and in whatever form * * * located in a public warehouse * * * on December 31 of each year, if such products, materials and/or goods have been designated as in transit to destinations out of state pursuant to the published tariffs of any railroad or common carrier by the filing of the freight bill covering such products, materials and/or goods with the agency

---

[1] Subsequent amendments have not changed the language under discussion here.

designated by such tariffs, so as to entitle the shipper to
transportation rate privileges: * * * Provided, That any
property located in any public warehouse, * * * on
December 31 of each year, which is exempt from taxa-
tion under this provision but which is not shipped
outside the state of Michigan pursuant to the particular
tariff under which such transportation rate privilege
was established, shall be assessed upon the next suc-
ceeding or any subsequent assessment roll by the as-
sessing officer and taxed at the same rate of taxation as
other taxable properties for the year or years for which
such property was exempted, to the owner at the time
of such omission; or if the owner or person entitled to
possession of such products, materials and/or goods
shall be a resident of or authorized to do business in
Michigan and shall file with the assessing officer, with
whom statements of taxable property are required to be
filed, a statement under oath that said products, materi-
als and/or goods are not for sale or use in, and will be
shipped to a point or points outside the state of Michi-
gan: Provided, That if any person, firm or corporation
shall claim exemption by the filing of any such sworn
statement, such person, firm or corporation shall ap-
pend to his statement of taxable property required to be
filed in the next year, or if no statement of taxable
property is filed for the next year, a sworn statement on
a form required by the assessing officer shall be filed
showing a complete list of the property for which such
exemption was claimed with a statement of the manner
of shipment and of the point or points to which said
products, materials and/or goods were shipped from
said public warehouse, * * * and any such products,
materials and/or goods not shipped to a point or points
outside the state of Michigan shall be assessed upon the
next succeeding assessment roll, or on any subsequent
assessment roll by the assessing officer and taxed at the
same rate of taxation as other taxable properties for
the year or years for which such property was ex-
empted, to the owner at the time of such omission:
* * * For the purpose of this section, a public ware-
house * * * is defined as any warehouse * * * owned or
operated by any person, firm or corporation engaged in
the business of storing products, materials and/or goods

for hire for profit who issues a schedule of rates for storage of such products, materials and/or goods and who issues warehouse receipts pursuant to the provisions of Act No. 303 of the Public Acts of 1909: Provided, That no portion of a public warehouse * * * leased to a tenant or no portion of any premises owned or leased or operated by a consignor or consignee. or any affiliate or subsidiary of such consignor or consignee shall be deemed to be a public warehouse * * * ."

MCLA 211.9(14); MSA 7.9(14), insofar as applicable to the case at bar, provides:

"Fourteenth, Farm products processed or otherwise, the ultimate use of which is for human or animal consumption as food, but expressly excepting wine, beer and other alcoholic beverages, regularly placed in storage in a public warehouse * * * as defined in the twelfth subdivision of this section, shall, while so in storage be considered in transit and only temporarily at rest, and not subject to personal property taxation: Provided, That the assessing officer shall be the determining authority as to what constitutes, is defined as, or classified as, farm products as used in this subdivision: * * * ."

It cannot be denied that the Legislature has the power to classify subjects for purposes of taxation, and that the Legislature has the power to create, grant, and deny exemptions from taxation. *United States Cold Storage Corp v Detroit Board of Assessors,* 349 Mich 81; 84 NW2d 487 (1957). Plaintiff, however, objects to the unreasonable classification that arises from the exclusion under subparagraph 12 of farm products stored in a warehouse when such a warehouse is owned or affiliated by a consignor of the products. It is hypothesized that a consignor who deposits goods in a warehouse owned or operated by him would lose the exemption from tax while another consignor, not having

any connection with the warehouse, could deposit the identical goods in the warehouse and qualify for exemption. This situation, plaintiff maintains, is an unconstitutional classification based merely on ownership. The validity of this classification is not reviewed by looking at one factor, but proceeds on the question of whether there is clear and hostile discrimination between particular persons and classes. This test was approved in *US Cold Storage, supra:*

" 'Granting the power of classification, we must grant government the right to select the differences upon which the classification shall be based, and they need not be great or conspicuous. (Citing case.) The State is not bound by any rigid equality. This is the rule;—its limitation is that it must not be exercised in "clear and hostile discrimination between particular persons and classes". (Citing case.) Thus defined and thus limited, it is a vital principle, giving to government freedom to meet its exigencies, not binding its action by rigid formulas, but apportioning its burdens, and permitting it to make those "discriminations which the best interests of society require".' "

The discrimination here is not hostile nor arbitrary but would appear to rest on a rational basis in distinguishing "public" warehouses from others for exemption purposes. Subparagraph 14 has been drafted to establish a presumption that farm products stored in public warehouses, as those facilities are defined in subparagraph 12, are conclusively presumed to be "in transit".[2] The Legislature may well have determined that in most cases, farm

_____

[2] Once products of a state are committed to a common carrier for transportation out of the state, or once those products have started their ultimate passage to another state, they are no longer taxable as part of the general mass of property in the original state. *Diamond Match Co v Village of Ontonagon,* 188 US 82; 23 S Ct 266; 47 L Ed 394 (1902).

products are perishable, and that when placed in a public warehouse it is the usual intent of the owner to ship such products within a short period of time before they lose their value and become a liability rather than an asset. However, it may also be the case that farm products are placed in a warehouse to await ripening or some other economically beneficial change before sale is attempted and shipment intended. In the latter case, the owner of the product would usually want to maintain some control over the chemical processes which affect his agricultural commodities. Thus, these processes would usually be allowed to proceed in a warehouse owned, or controlled by, or affiliated with the owner of the products, since it may not be the usual business of public warehouses to supervise goods in their care. Differentiation on a case-by-case basis as to the "true purpose" with which goods are stored in an owned or affiliated warehouse would place an intolerable burden on the taxing authorities. Thus, it appears that the Legislature resolved to apply a conclusive presumption to products stored in each category of warehouses, without regard to a factual inquiry as to individual circumstances.

And where administrative expense or convenience is a factor in establishing a classification, the legislative action has ordinarily been upheld. In 51 Am Jur, Taxation, § 520, p 523:

"A legislature is not bound to tax every member of a class, or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny such distinctions must be presumed to rest on that basis if there is any conceivable state of facts which would support it. * * * Administrative convenience and expense in the collection or measurement of a tax may constitute a valid basis for exemption therefrom."

Having found a rational basis for distinguishing between warehouses for exemption purposes and no clear hostile discrimination, the validity of the statute is upheld.

II.

*Do the terms "Consignor" and "Consignee", as used in MCLA 211.9(12), include those persons or companies which simply deposit products in a warehouse for storage?*

Plaintiff admits that the warehouse is its corporate subsidiary, but contends that the mere act of storage did not cause plaintiff to become a "consignor" or "consignee" as to the farm products. Because the terms are not defined in the statute, we must follow tenets of statutory construction in ascertaining their proper meaning. The parties have referred this Court to MCLA 8.3a; MSA 2.212(1) which directs courts to construe words according to the common usage of the terms except where they have acquired a peculiar meaning in the law. But plaintiff and defendant cannot agree on which of the two directives apply or even as to what "common usage" means. This dilemma is evidence of the fact that "consignor" has not acquired a meaning understood by all segments of the business community. These considerations compel us to use another approach in determining the Legislature's intent.

In analyzing MCLA 211.9(12), it must be remembered that imposition provisions of a taxing statute are construed in favor of the taxpayer while exemption provisions must be strictly construed in favor of the taxing agency. *Evanston YMCA Camp v State Tax Commission,* 369 Mich 1; 118 NW2d 818 (1962).

Plaintiff asserts that the term "consignor", as generally used in the business world, denotes one who puts goods into transit or shipment to another party, the consignee, for purposes of their ultimate disposition. We disagree with the proposition that such a narrow application of the term was intended. One plausible meaning ascribed to the term consign is found in 15A CJS, Consign, p 585, and is stated as follows:

"In mercantile law, the term has a well-defined legal meaning, and signifies to deliver goods to a carrier to be transmitted to a designated factor or agent; *to deposit with another to be sold, disposed of or called for, as merchandise or movable property.*
"The term implies an agency, and, applied in a commercial sense, means that the *property is committed or intrusted to the consignee for care or sale* and does not by any express or fair implication mean sale by one or purchase by another. It connotes delivery, and carries decided implication that the property consigned is not the property of the consignee, the title remaining in the consignor, the consignee being his agent." (Emphasis supplied.)

The term thus encompasses more than entrustment for shipment. It includes delivery of goods for care or storage. Applying the recognized rule that tax exemption statutes are to be strictly construed and exemptions are not lightly given, *Detroit v General Foods Corp,* 39 Mich App 180; 197 NW2d 315 (1972), we believe the Legislature's intent was to give "consignor" a broad meaning, thereby limiting the scope of the exemption. Plaintiff was properly denied an exemption from the taxing provisions of MCLA 211.1; MSA 7.1.

Affirmed. No costs, a public question being involved.

HOLBROOK, P. J., concurred.

O'Hara, J. (*dissenting*). I am in respectful but
none the less vigorous disagreement with my col-
leagues whom I hold in the highest esteem.

True it is that, given a few assumptions made by
the majority and reliance by them upon several
general statements in legal encylopedias, their
logic seems flawless.

The opinion, however, at least to me, does not
solve the dilemma created by controlling Michigan
Supreme Court precedent which we simply cannot
blink away. This dilemma was the cornerstone
upon which appellant's counsel rested his argu-
ment.

As noted by the majority, perforce we start with
certain absolutes.

The amount of the assessment is not challenged.
The character of the farm products admittedly
falls within the claimed exemption. It is not dis-
puted, and this issue was narrowed and precisely
delineated on oral argument, that had plaintiff
stored the involved products in a public warehouse
other than this one, which is operated by its
totally owned subsidiary, the tax levied could not
have been collected. Further, it is conceded that
had a different owner of the same products stored
them in the warehouse here involved those prod-
ucts would have been exempt as to him.

The stipulation recites that the warehouse with
which we are concerned was, before its acquisition
by plaintiff, operated as a public warehouse under
a different name. It is still available to and used
by many others who rent warehouse space. Plain-
tiff pays the same rate for its space as do the other
customers. Plaintiff's rental payments account for
about 30% of the warehouse income.

The agreed statement further points out that
plaintiff lost its prior privately-owned warehouse

through destruction by fire and was required to
obtain other facilities for the storage of the farm
products which it owns and which require ware-
housing. No question of any attempt by plaintiff to
conceal its corporate relationship with its subsidi-
ary is raised. "Corporate veil piercing", so-called,
is not involved. The question is purely one of
construction of two statutory provisions. I set them
forth.

MCLA 211.9(12); MSA 7.9(12), as amended by
1964 PA 275, provides in relevant part:

"The following personal property shall be exempt
from taxation, to wit:

* * *

"Twelfth, All products, materials and/or goods proc-
essed or otherwise and in whatever form * * * located
in a public warehouse * * * on December 31 of each
year, if such products, materials and/or goods have
been designated as in transit to destinations out of state
pursuant to the published tariffs of any railroad or
common carrier by the filing of the freight bill covering
such products, materials and/or goods with the agency
designated by such tariffs, so as to entitle the shipper to
transportation rate privileges: * * * Provided, That any
property located in any public warehouse, * * * on
December 31 of each year, which is exempt from taxa-
tion under this provision but which is not shipped
outside the state of Michigan pursuant to the particular
tariff under which such transportation rate privilege
was established, shall be assessed upon the next suc-
ceeding or any subsequent assessment roll by the as-
sessing officer and taxed at the same rate of taxation as
other taxable properties for the year or years for which
such property was exempted, to the owner at the time
of such omission; or if the owner or person entitled to
possession of such products, materials and/or goods
shall be a resident of or authorized to do business in
Michigan and shall file with the assessing officer, with
whom statements of taxable property are required to be
filed, a statement under oath that said products, materi-

als and/or goods are not for sale or in use, and will be shipped to a point or points outside the state of Michigan: Provided, That if any person, firm or corporation shall claim exemption by the filing of any such sworn statement, such person, firm or corporation shall append to his statement of taxable property required to be filed in the next year, or if no statement of taxable property is filed for the next year, a sworn statement on a form required by the assessing officer shall be filed showing a complete list of the property for which such exemption was claimed with a statement of the manner of shipment and of the point or points to which said products, materials and/or goods were shipped from said public warehouse, * * * and any such products, materials and/or goods not shipped to a point or points outside the state of Michigan shall be assessed upon the next suceeding assessment roll, or on any subsequent assessment roll by the assessing officer and taxed at the same rate of taxation as other taxable properties for the year or years for which such property was exempted, to the owner at the time of such omission: * * * For the purpose of this section, a public warehouse * * * is defined as any warehouse * * * owned or operated by any person, firm or corporation engaged in the business of storing products, materials and/or goods for hire for profit who issues a schedule of rates for storage of such products, materials and/or goods and who issues warehouse receipts pursuant to. the provisions of Act No. 303 of the Public Acts of 1909:[1] Provided, That no portion of a public warehouse * * * leased to a tenant or no portion of any premises owned or leased or operated by a consignor or consignee or any affiliate or subsidiary of such consignor or consignee shall be deemed to be a public warehouse * * * ."

MCLA 211.9(14); MSA 7.9(14), insofar as applicable to the case at bar, provides:

"Fourteenth, Farm products processed or otherwise,

---

[1] Repealed by PA 1962, No. 174, § 9992, effective January 1, 1964. *See,* now, MCLA 440.7101 *et seq.;* MSA 19.7101 *et seq.* The change is irrelevant to the issues herein.

the ultimate use of which is for human or animal consumption as food, but expressly excepting wine, beer and other alcoholic beverages, regularly placed in storage in a public warehouse * * * as defined in the twelfth subdivision of this section, shall, while so in storage be considered in transit and only temporarily at rest, and not subject to personal property taxation: Provided, That the assessing officer shall be the determining authority as to what constitutes, is defined as, or classified as, farm products as used in this subdivision; * * * ."

Plaintiff's position is that defendant city is hopelessly pinioned on the horns of a dilemma. It argues that since it is conceded that the warehouse involved is a *public* warehouse as defined in the twelfth subsection as to all others except plaintiff the classification of non-public as to plaintiff alone runs squarely into the interdiction of *United States Cold Storage Corp v Detroit Board of Assessors,* 349 Mich 81; 84 NW2d 487 (1957).

In that case the Supreme Court quoted approvingly the following language:

" 'This is the rule;—its limitation [the government's power of classification] is that it must not be exercised in "clear and hostile discriminations between particular persons and classes".' " 349 Mich at 92; 84 NW2d at 493.

So plaintiff says the classification in this case of a public warehouse as defined in subsection 12 that exempts the farm products of another is a classification that is of necessity, a fortiori, and inescapably a clear and hostile discrimination between particular persons and classes and not of products.

On the other hand, continues plaintiff, if subsection 14 stands on its own subsectional feet, and the language of subsection 12 which creates the hostile

discrimination namely, "Provided, That no portion of a public warehouse * * * leased to a tenant or no portion of any premises owned or leased or operated by a *consignor* or *consignee* of any affiliate, or subsidiary of such *consignor* or *consignee* shall be deemed to be a public warehouse" (emphasis supplied), is read out of subsection 14, then plaintiff's warehouse in this case *is* a public warehouse and its products are clearly exempt. This, plaintiff argues, is because it is obviously neither a consignor or consignee and the exclusion does not apply to it.

Defendant city by its able counsel has striven mightily to avoid being boxed into this corner. I see no way out.

Mr. Justice EDWARDS writing for the minority in the *Cold Storage* case pointed the way in his well reasoned dissent. He simply held the statute unconstitutional. However, the opinion collected only two other signatures. The majority opinion prevails and we are bound by it.

I believe that the legislative intent of subsection 12 was to eliminate the danger of the holding that Michigan was placing an unreasonable burden on interstate commerce, which, of course, is proscribed under the commerce clause of the Federal Constitution.[2] The whole thrust of the subsection speaks to this purpose because it specifically provides for reassessment in any succeeding year if the materials and goods are *not in fact* shipped outside this state.

In the case at bar plaintiff did none of the things which would place it in the category of a consignor. It did not designate the goods as in transit to destinations out of state pursuant to the published tariffs of any common carrier. It filed no

---

[2] Art I, § 8.

freight bills covering the products with any agency designated by such tariffs. Consignor is not a mysterious nor an occult term. Simply put, a consignor is one who places property in transit via a certificated carrier pursuant to a published tariff. If the product is committed to shipment and placed in a warehouse under a freight bill so as to entitle it to transportation rate privileges the owner by most known usage becomes a "consignor". The consignee is simply the one to whom the shipment is consigned.[3] Because in transportation law there often are questions as to when the title to the consigned goods passes, the Legislature included the term "consignee" so that the assessing authority would not be bugged by a lot of Mickey Mouse as to whether title on the assessing date was in the "consignor" or "consignee". It has to be in one or the other dependent upon the terms of the contract of carriage. So if, as I noted earlier, the product never actually enters the stream of interstate commerce either the consignor or consignee is going to have to pay the tax in some succeeding year. Thus, the device of phony warehousing for tax avoidance is foiled.

The learned trial judge in his well written opinion relied heavily upon *Frigid Food Products, Inc v Detroit,* 31 Mich App 402; 187 NW2d 916 (1971). In discussing that case he made the following observation:

"On the other hand, the court is faced with the case of *Frigid Food Products, Inc v City of Detroit,* 31 Mich

---

[3] I am not unmindful of the definitions of "consignor" and "consignee" contained in article 7 of the Uniform Commercial Code. MCLA 440.7102; MSA 19.7102. These provisions do not mandate a contrary result. I am here concerened with ordinary usage, not the usage- dictated by a definition contained in a specific statute for application to cases involving *that* statute. The UCC did not suddenly wipe out the longstanding ordinary usage definition of consignor and consignee for general purposes.

App 402 (1971), a case made available to the bar by
publication after the plaintiff filed its brief in this
matter and long after this case was started. No matter
how I try, I cannot distinguish *Frigid Food Products*
from the factual situation at hand. That decision talks
only about a definitional issue not before this court, the
meaning of 'affiliate' in MSA 7.9. On the other hand, it
refuses the personal property tax exemption to a farm
products owner who places it in an 'affiliated' public
warehouse. Here we clearly have a 'subsidiary' ware-
house, for which the statute holds the same conse-
quences. *Frigid Food Products* is silent on whether or
not the farm products owner, apparently in the identi-
cal situation with respect to its goods as the plaintiff
here, was a 'consignor' or 'consignee'. To ignore the
effect of that decision on the dispute at hand would be
to say a decision by an appellate court should not be
followed by the trial court unless the trial court assures
itself that the appellate court has touched all logical
bases on its way to final decision. I don't think the
appellate court has to do that, and to ignore this
decision, I think, would mean that someone in the
identical position as plaintiff in Detroit could come out
with a different result than if he were operating here in
Grand Rapids. If *Frigid Food Products* is to be re-
stricted in its application, it must be done by the Court
of Appeals or by the Michigan Supreme Court."

I am compelled to disagree both with the gen-
eral principle expressed and with the specific ap-
plication of that opinion of the trial judge to the
case at bar.

It is not my understanding that appellate courts
do, or should adjudicate questions not raised, ar-
gued, and briefed in the court below. A contrary
concept would constitute us as "second-guess" trial
courts and not courts of review. This I think would
be mildly disastrous for both categories of courts.

*Frigid Food Products* decided what it decided
and nothing more. The *Frigid Food* panel stated:

"The issue before the circuit court was whether General Cold Storage Warehouse was an affiliate of Frigid Food Products so as to exclude plaintiff from the personal property tax exemption.

"The trial court found that Frigid and General were affiliated and that the assessment was proper. This decision was based upon a determination that 'affiliated' means 'connected' and that plaintiff did not establish its right to an exemption by a preponderance of the evidence." 31 Mich App at 404–405; 187 NW2d at 917.

In this case no such question is presented. The agreed statement clearly concedes that Triple Temp Storage Company is a wholly owned subsidiary of plaintiff. The trial judge correctly notes, as seen in the prior quotation from his opinion, that *"Frigid Food Products* is silent on whether or not * * * plaintiff * * * was a 'consignor' or 'consignee' ". That, however, is precisely what *this* lawsuit is all about.

Upon the answer to that question depends the answer to whether the exemption clearly denied to a consignor or consignee or a subsidiary or affiliate of such consignor or consignee, should be properly denied to plaintiff herein. I repeat, at the peril of repetition, that in the court below and again in this Court, plaintiff has insisted it is neither. If it is neither, the proviso relating to those two terms does not apply to it, and the constitutional dilemma is avoided.

This is the question which the *Frigid Food* panel directly and emphatically declined to adjudicate. I quote from *Frigid Food,* at 31 Mich App 405; 187 NW2d 917–918:

"Plaintiff attempts to raise the constitutional issue again on appeal. This Court will not entertain a question which was not raised in the pleadings, was specifically withdrawn by plaintiff at the pretrial conference, and where it is apparent on the record that plaintiff not

only could but did decide to proceed without reference to the principles of constitutional law. *Mitchell v Grewal,* 338 Mich 81, 87; 61 NW2d 3 (1953); *Ridenour v County of Bay,* 366 Mich 225, 243; 114 NW2d 172 (1962); *Azzaro v Stupar,* 17 Mich App 170, 172; 169 NW2d 151 (1969)."

It seems to me that *Frigid Food* is not only not controlling, it is not even decisionally relevant to plaintiff's first stated question for review.

By holding for plaintiff in this case I disturb not one iota the decisional holding in *Frigid Food.*

I hold further that the exclusion of any portion of a public warehouse owned by a consignor or consignee or any subsidiary thereof does not exclude plaintiff from the exemption for the reason that plaintiff is neither one nor the other by any known definition or usage of those terms (except as hereinbefore noted).

If the Legislature in subsection 14 had meant that anyone who merely stores farm products in a public warehouse by doing so becomes a consignor or consignee it would have been a simple matter to have said so. Instead it created an express presumption in order to bring products simply stored by one neither a consignor nor a consignee within the exemption. It did so by providing that farm products so stored should be "considered in transit and only temporarily at rest, and not subject to personal property taxation". By this presumption they placed such products for tax purposes within the concept of the interstate commerce exemption. It is extremely significant, I think, that they made the exemption permanent by omitting from subsection 14 the right of the taxing authority to reassess them in any subsequent year which is provided for in subsection 12.

As I view the situation the taxing authority's

relief lies in an amendment to subsection 14 or the overruling by the Supreme Court of the majority opinion in *Cold Storage* as it defines "hostile and discriminatory classification". As an intermediate appellate court I hold this Court can do neither.

For the reasons herein stated I would vacate the order granting defendant's motion for summary judgment. I would direct the entry of a summary judgment for plaintiff as moved for in the trial court and award no costs.