FROST-PACK DISTRIBUTING COMPANY v CITY OF GRAND
RAPIDS

Docket No. 55930. Argued March 6, 1975 (Calendar No. 18).—Decided
May 2, 1977.

Plaintiff Frost-Pack Distributing Company brought an action
against the City of Grand Rapids for recovery of 1968 personal
property taxes paid under protest on certain farm products
stored in a public warehouse which was operated by the plain-
tiff's wholly-owned subsidiary corporation. The statute exempts
farm products in a public warehouse, but provides that a
warehouse operated by a subsidiary of a "consignor" or "con-
signee" shall not be deemed a public warehouse. The Kent
Circuit Court, George V. Boucher, J., granted summary judg-
ment for the defendant. The Court of Appeals, Holbrook, P. J.,
and Bashara, J. (O'Hara, J., dissenting), affirmed (Docket No.
16044). Plaintiff appeals. *Held:*

Justice Levin, joined by Justices Coleman and Fitzgerald,
reversed, without reaching the constitutional issue of classifica-
tion, on the ground that an owner of farm products placed in
storage in a public warehouse is not a consignor and therefore
can claim an exemption. The statute creates an absolute ex-
emption for farm products stored in a public warehouse with-
out regard to whether the goods are actually in transit to out-
of-state destinations, and to deny the exemption to farm prod-
ucts which are not in fact in transit to out-of-state destinations
undermines the statutory differentiation between other goods,
which must be in transit to be exempt, and farm products. The
words "consignor" and "consignee" are terms of art in the law

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 8, 17] 3 Am Jur 2d, Agriculture §§ 7–9.
[3, 4, 9, 13, 14] 13 Am Jur 2d, Carriers § 16.
[5] 71 Am Jur 2d, State and Local Taxation § 249.
[6, 7, 12, 15] 71 Am Jur 2d, State and Local Taxation §§ 244–247.
[10, 11] 73 Am Jur 2d, Statutes § 165.
[16] 71 Am Jur 2d, State and Local Taxation § 326 *et seq.*
[18, 19] 71 Am Jur 2d, State and Local Taxation § 310.
[20] 71 Am Jur 2d, State and Local Taxation § 175.
[21] 71 Am Jur 2d, State and Local Taxation § 177.

and should be given the legal meaning appropriate to the context. In the context of determining whether goods are in fact in transit in interstate commerce, a consignor is a shipper or transmitter of goods and a consignee is the ultimate recipient of a shipment of goods. If goods are not shipped or placed in transit to out-of-state destinations there is no consignment, no consignor, and no consignee. The purpose of the exemption for non-farm products and the consignor/consignee qualification is to provide administrative machinery for implementing the immunity in the United States Constitution for goods in interstate commerce and at the same time to protect against tax avoidance for goods not so in transit. To define "consignor" to include one who delivers goods for care or storage deprives the term "consignee" of a complementary meaning, because if "consignee" had a complementary meaning in this usage, it would mean the owner of the warehouse to which the goods were delivered, and *no* warehouse could qualify as a public warehouse for the exemption. The consignor and consignee exclusion appears to be designed against tax avoidance for non-farm products, and it is not within the legislative purpose to apply the exclusion to farm products; the Legislature having determined that farm products not in transit, stored in a public warehouse, are exempt, there can be no misuse of the exemption or possible tax avoidance in placing farm products in the owner's warehouse. To construe consignor as including one who delivers goods for storage, therefore, does not implement a legislative purpose of preventing tax avoidance. "Consignee" means in this context the ultimate recipient of a shipment of goods, not the owner of the warehouse to which Frost-Pack delivered the farm products.

Chief Justice Kavanagh, joined by Justice Williams, dissented. He wrote that:

1. Goods actually designated as being in transit, located in a public warehouse, are exempted from personal property tax; farm products are presumed in transit if stored in a public warehouse, except those farm products stored in a warehouse owned by a consignor or consignee of the goods stored therein. Considering the overall statutory scheme involved, the several possible definitions of "consignor", and the rule of strict construction against the taxpayer of exemption provisions, an owner of farm products that stores those products in a public warehouse which it owns and operates as a wholly-owned subsidiary is a "consignor" of those goods, and is thereby denied the exemption from personal property taxation afforded by MCL 211.9; MSA 7.9.

2. The exemption classification distinguishes between those farm products stored in a public warehouse and those in a private warehouse. The purpose of granting the exemption, *i.e.* to avoid offending the interstate commerce provisions of the United States Constitution, would be carried to a self-defeating extreme if goods stored in a warehouse owned by the person so storing them were exempted. The presumption that the goods are "in transit" is not present in such circumstances, as it is when the goods are stored in another's public warehouse.

3. The classification created by the statutory presumption that farm products stored in a public warehouse were "in transit" and others not is constitutionally permissible for administrative convenience so long as the lack of precise equivalence to case-by-case determination does not exceed the bounds of substantiality tolerated by the applicable level of scrutiny. The statute does not deny the plaintiff equal protection of the laws, nor does it violate the constitutional requirement of a "uniform rule of taxation". The difference is treatment of farm products stored in a public warehouse and in a private warehouse for the purposes of exemption from personal property tax cannot be said to be unreasonable and to bear no reasonable relation to the object of the legislation.

Justices Ryan and Blair Moody, Jr., did not participate.

Reversed and remanded.

52 Mich App 694; 218 NW2d 75 (1974) reversed.

OPINION OF THE COURT

1. TAXATION—PERSONAL PROPERTY—EXEMPTIONS—FARM PRODUCTS—WAREHOUSES—"CONSIGNOR".

A person who stores farm products to out-of-state destinations in a public warehouse that are not in transit, which it owns and operates by a wholly-owned subsidiary, is not a "consignor" within the meaning of the statute denying a personal property tax exemption to a consignor who stores such property in a warehouse operated by a subsidiary, and therefore the owner can claim the exemption (MCL 211.9; MSA 7.9).

2. TAXATION—PERSONAL PROPERTY—EXEMPTIONS—FARM PRODUCTS—WAREHOUSES—LEGISLATIVE INTENT.

The plain legislative intent is to exempt from personal property taxation such farm products as are found in public warehouses in the state on tax day, regardless of whether such products are destined for use inside or outside the state, or whether their destination is unascertained at the time (MCL 211.9; MSA 7.9).

3. TAXATION—PERSONAL PROPERTY—EXEMPTIONS—TRANSIT—WORDS
   AND PHRASES—"CONSIGNOR".
   "Consignor", in the context of the statute providing at length
   regarding the determination whether goods are in fact in
   transit in interstate commerce and thus exempt from the
   personal property tax, is a shipper or transmitter of goods, and
   a "consignee" is the person to whom the goods are shipped
   (MCL 211.9; MSA 7.9).

4. STATUTES—CONSTRUCTION—WORDS AND PHRASES—"CONSIGNOR".
   The words "consignor" and "consignee" are terms of art in the
   law and should be given a legal meaning appropriate to the
   context in construing a statute.

5. TAXATION—PERSONAL PROPERTY—INTERSTATE COMMERCE—CONSTI-
   TUTIONAL LAW.
   Goods in interstate commerce are, by reason of the United States
   Constitution, immune from local taxation (US Const, art I, § 8).

6. TAXATION—PERSONAL PROPERTY—INTERSTATE COMMERCE—WARE-
   HOUSES.
   Warehousing goods as a convenient intermediate step in the
   process of getting them to their final destination does not break
   that continuity of transit which is the crucial question to be
   settled in determining whether personal property moving in
   interstate commerce is subject to local taxation (US Const, art
   I, § 8; MCL 211.9; MSA 7.9).

7. TAXATION—PERSONAL PROPERTY—INTERSTATE COMMERCE—EXEMP-
   TIONS—WAREHOUSES.
   The Legislature, to avoid extending an exemption from personal
   property tax of goods in transit to destinations out of state
   beyond what is required by the Federal Constitution, provided
   in effect that the interstate journey will not be deemed to have
   commenced if the goods are stored in a warehouse owned by
   the shipper (consignor) or its affiliate or subsidiary; similarly,
   the interstate journey will be deemed to have ended if the
   warehouse is owned by the ultimate recipient of the goods
   (consignee) or its affiliate or subsidiary (US Const, art I, § 8;
   MCL 211.9; MSA 7.9).

8. TAXATION—PERSONAL PROPERTY—FARM PRODUCTS—EXEMPTIONS.
   Farm products, unlike non-farm products, can be exempted from
   taxation by their mere placement in a public warehouse with-
   out regard to whether they are actually in transit to out-of-
   state destinations, so that it is of no significance whether
   interstate shipment has in substance begun or ended; therefore

there is no need of defining "consignor" and "consignee" differently than they are defined to prevent tax avoidance in the exemption of non-farm products in transit to out-of-state destinations (MCL 211.9; MSA 7.9).

9. Taxation—Personal Property—Exemptions—Warehouses—"Consignor".

To define the term "consignor" to include one to whom goods are delivered for care or storage deprives the term "consignee" of a complementary meaning in the context of the statute exempting certain personal property stored in a public warehouse from taxation except that a warehouse shall not be deemed to be public where it is owned or leased or operated by a consignor or consignee or an affiliate or subsidiary of a consignor or consignee; if "consignee" is not defined as the ultimate recipient of the goods, then the owner of the public warehouse becomes the consignee, and *no* warehouse can be a public warehouse, making the exemption meaningless (MCL 211.9; MSA 7.9).

10. Statutes—Construction—Legislative Purpose.

A reasonable construction must be given where statutory language is of doubtful meaning, looking to the purpose subserved thereby; its occasion and necessity are matters of judicial concern, and its purpose should be effected if possible.

11. Statutes—Construction—Legislative Purpose.

Courts, in construing a legislative enactment, are not at liberty to choose a construction that implements any rational purpose but, rather, must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used.

12. Taxation—Personal Property—Exemptions—Farm Products—Statutes—Construction.

An exclusion in the tax law designed to guard against tax avoidance and extension of the exemption of non-farm products in transit to out-of-state destinations beyond what is required by the Federal Constitution does not apply, within the legislative purpose, to the exemption of farm products; the Legislature having determined that farm products not in transit, stored in a public warehouse, are exempt, there can be no misuse of the exemption or possible tax avoidance in placing farm products in the owner's warehouse (MCL 211.9; MSA 7.9).

DISSENTING OPINION

KAVANAGH, C. J., and WILLIAMS, J.

13. WORDS AND PHRASES—CONSIGNEE—MERCANTILE LAW.

*"Consignee", in a mercantile use, means one to whom a consignment may be made, a person to whom goods are shipped for sale, or one to whom a carrier may lawfully make delivery in accordance with its contract of carriage, or one to whom goods are consigned, shipped, or otherwise transmitted; the mercantile meaning of "consignee" is not restricted to one who receives property for the purpose of sale.*

14. WORDS AND PHRASES—CONSIGN—MERCANTILE LAW.

*"Consign", in mercantile law, means to deposit personal property with another to be sold, disposed of, or called for; the property is committed or intrusted to the consignee for care or sale.*

15. TAXATION—PERSONAL PROPERTY—EXEMPTIONS—GOODS IN TRANSIT —FARM PRODUCTS.

*Goods actually designated as being in transit, located in a public warehouse, are exempted from personal property tax; farm products are presumed in transit if stored in a public warehouse (MCL 211.9; MSA 7.9).*

16. TAXATION—EXEMPTIONS—STATUTES—CONSTRUCTION.

*Imposition provisions of a taxing statute are construed in favor of the taxpayer while exemption provisions are strictly construed in favor of the taxing agency; an exemption ought to be expressed in clear and unambiguous terms, and the burden of establishing it is upon him who claims it.*

17. TAXATION—PERSONAL PROPERTY—EXEMPTIONS—FARM PRODUCTS— WAREHOUSES—CONSIGNOR.

*An owner of farm products that stores those products in a public warehouse which it owns and operates through a wholly-owned subsidiary is a "consignor" of those goods and is thereby denied the statutory exemption from personal property tax (MCL 211.9; MSA 7.9).*

18. TAXATION—CONSTITUTIONAL LAW—LEGISLATURE—POWER TO TAX.

*The Legislature has the power of prescribing the subjects of taxation and exemption, notwithstanding the Constitution requires the Legislature to provide a uniform rule of taxation, except on property paying specific taxes (Const 1963, art 9, § 3).*

19. Taxation—Constitutional Law—Legislature—Power to Tax
—Statutes—Classifications.

*The Legislature has the power over the subjects of taxation and
may exercise discrimination in classifying those subjects when
not obviously exercised in a spirit of prejudice and favoritism;
the state is not bound by any rigid equality, but its power must
not be exercised in clear and hostile discriminations between
particular persons and classes (US Const, Am XIV).*

20. Constitutional Law—Equal Protection—Statutes—Classifi-
cation.

*There must be a relation between a classification in legislation
and the purposes of the act in which it is found in determining
what is within legislative discretion and what is arbitrary (US
Const, Am XIV; Const 1963, art 1, § 2).*

21. Taxation—Personal Property—Exemptions—Farm Products—
Constitutional Law—Equal Protection.

*The statute which exempts farm products stored in a public
warehouse from personal property tax but not the same prod-
ucts stored in a private warehouse does not deny the owner of
farm products stored in a warehouse of its wholly-owned sub-
sidiary equal protection of the laws, nor does it violate the
constitutional requirement of a uniform rule of taxation (US
Const, Am XIV; Const 1963, art 1, § 2, art 9, § 3, MCL 211.9;
MSA 7.9).*

*Clary, Nantz, Wood & Van Orden* for plaintiff.

*George A. Weible,* City Attorney (by *Philip A.
Balkema,* Special City Attorney), for defendant.

Levin, J. The issue is whether a person who
stores in a public warehouse agricultural products
that are not in transit to out of state destinations
is a "consignor" within the purpose of a personal
property tax exemption.

The act exempts, in paragraph 12th of the sec-
tion delineating the personal property tax exemp-
tions, products and goods located in a public ware-

house when *"in transit* to destinations out of
state"[1] (emphasis supplied).

Farm products in a public warehouse are ex-
empted, in paragraph 14th, whether or not actu-
ally in transit to destinations out of state: farm
products "regularly placed in storage in a public
warehouse  *  *  *  shall, while so in storage *be
considered* in transit and only temporarily at rest,
and not subject to personal property taxation".[2]
(Emphasis supplied.)

The constructional issue arises under a proviso
to paragraph 12th stating that "no portion of any
premises owned or leased or operated by a con-
signor or consignee or any affiliate or subsidiary of
such *consignor* or *consignee* shall be deemed to be
a public warehouse" (emphasis supplied);[3] para-
graph 14th adopts paragraph 12th's definition of
the term "public warehouse".

In this case, farm products that were not actu-
ally in transit to destinations out of state were
stored by their owner in a wholly-owned subsidi-
ary's public warehouse.[4]

We hold that an owner of farm products placed

---

[1] MCLA 211.9; MSA 7.9 (paragraph 12th).

[2] *Id* (paragraph 14th).

[3] *Id* (paragraph 12th).

[4] Frost-Pack is engaged in the sale and distribution of various food
products, primarily in frozen state. Frost-Pack conducts its business
in a building, a portion of which was operated by the former owner of
the building as a public warehouse. After Frost-Pack acquired the
building, the warehouse has been operated by Triple Temp Storage
Company, a wholly owned subsidiary of Frost-Pack. A common wall
separates and segregates the physical facilities occupied by the two
corporations.

Frost-Pack accounts for approximately 30% of Triple Temp's in-
come and pays on the same schedule of fees as other customers.
Triple Temp has a large and varied clientele including many well-
known national companies.

It was stipulated that the facility operated by Triple Temp is a
public warehouse and that Frost-Pack "regularly" *(see* fn 2, *supra,*
and accompanying text)* places farm products in that warehouse.

in storage in a public warehouse that are not in transit to out of state destinations is not a consignor and therefore can claim the exemption.

I

There are two pertinent paragraphs in the section delineating the exemptions from the personal property tax. The paragraph 12th exemption provides:

"*All products,* materials and/or goods processed or otherwise and in whatever form but expressly excepting alcoholic beverages, *located in a public warehouse,* dock or port facility on December 31 of each year, *if such products,* materials and/or goods *have been designated as in transit to destinations out of state* pursuant to the published tariffs of any railroad or common carrier by the filing of the freight bill covering such products, materials and/or goods with the agency designated by such tariffs, so as to entitle the shipper to transportation rate privileges * * * ." MCLA 211.9; MSA 7.9 (paragraph 12th) (emphasis supplied).

A second, unnumbered paragraph of paragraph 12th provides:

"For the purpose of this section, a public warehouse, dock or port facility is defined as any warehouse, dock or port facility owned or operated by any person, firm or corporation engaged in the business of storing products, materials and/or goods for hire for profit who issues a schedule of rates for storage of such products, materials and/or goods and who issues warehouse receipts pursuant to the provision of Act No. 303 of the Public Acts of 1909: Provided, That no portion of a public warehouse, dock or port facility leased to a tenant and *no portion of any premises owned or leased or operated by a consignor or consignee or any affiliate or subsidiary of such consignor or consignee shall be*

*deemed to be a public warehouse,* dock or port facility."
*Id* (emphasis supplied).

The paragraph 14th exemption provides:

> *"Farm products* processed or otherwise, the ultimate use of which is for human or ·animal consumption as food, but expressly excepting wine, beer and other alcoholic beverages, *regularly placed in storage in a public warehouse,* dock or port facility, *as defined in the twelfth subdivision* of this section, *shall, while so in storage be considered in transit and only temporarily at rest, and not subject to personal property taxation * * * ." Id* (paragraph 14th) (emphasis supplied).

Frost-Pack paid the personal property tax under protest and filed this action for refund.[5] The circuit judge was of the opinion that Frost-Pack's "position is the better reasoned one in view of the context and technical language used throughout the General Property Tax Act". He felt bound, however, by the implications of *Frigid Food Products, Inc v Detroit,* 31 Mich App 402; 187 NW2d 916 (1971), where an owner of farm products stored in a public warehouse was denied an exemption on other grounds.

The Court of Appeals affirmed and held that the term consignor "encompasses more than entrustment for shipment. It includes delivery of goods for care or storage."[6] Also rejected was Frost-Pack's alternative challenge on constitutional

[5] On December 31, 1967, the tax date, farm products, neither sold nor invoiced to a customer, valued at $197,967.80 were stored by Frost-Pack with Triple Temp.

The City of Grand Rapids assessed the farm products so stored as part of Frost-Pack's 1968 personal property assessment. Frost-Pack successively appealed to the Grand Rapids City Assessor, the Board of Review and the State Tax Commission and then paid the tax under protest.

[6] *Frost-Pack Distributing Co v Grand Rapids,* 52 Mich App 694, 703; 218 NW2d 75 (1974).

grounds to the classification resulting from the Court of Appeals construction of the term consignor. Justice O'HARA dissented on constitutional and constructional grounds. The city's construction, he said, "runs squarely into the interdiction of *United States Cold Storage Corp v Detroit Board of Assessors,* 349 Mich 81; 84 NW2d 487 (1957)", where this Court declared that the classification "must not be exercised in 'clear and hostile discriminations between particular persons and classes'. 349 Mich 92; 84 NW2d 493." Addressing the constructional issue, he continued:

"I believe that the legislative intent of subsection 12 was to eliminate the danger of the holding that Michigan was placing an unreasonable burden on interstate commerce, which, of course, is proscribed under the commerce clause of the Federal Constitution. The whole thrust of the subsection speaks to this purpose because it specifically provides for reassessment in any succeeding year if the materials and goods are *not in fact* shipped outside this state.

"In the case at bar plaintiff did none of the things which would place it in the category of a consignor. It did not designate the goods as in transit to destinations out of state pursuant to the published tariffs of any common carrier. It filed no freight bills covering the products with any agency designated by such tariffs. Consignor is not a mysterious nor an occult term. Simply put, a consignor is one who places property in transit via a certificated carrier pursuant to a published tariff. If the product is committed to shipment and placed in a warehouse under a freight bill so as to entitle it to transportation rate privileges the owner by most known usage becomes a 'consignor'. The consignee is simply the one to whom the shipment is consigned. Because in transportation law there often are questions as to when the title to the consigned goods passes, the Legislature included the term 'consignee' so that the assessing authority would not be bugged by a lot of Mickey Mouse as to whether title on the assessing date

was in the 'consignor' or 'consignee'. It has to be in one or the other dependent upon the terms of the contract of carriage. So if, as I noted earlier, the product never actually enters the stream of interstate commerce either the consignor or consignee is going to have to pay the tax in some succeeding year. Thus, the device of phony warehousing for tax avoidance is foiled" (emphasis in original; footnotes omitted).[7]

He also noted that the issue in *Frigid Foods* was whether the owner of the public warehouse was an "affiliate", and no other question was presented or decided.

Without reaching the constitutional issue, we reverse the Court of Appeals on the constructional issue for the reasons cogently stated by Justice O'HARA.

## II

Farm products are exempt under paragraph 14th whether or not actually in transit to destinations out of state. The city agrees.[8] As stated, albeit in dissent, by three members of this Court in *United States Cold Storage Corp v Detroit Board of Assessors, supra,* p 94:

"It appears that the plain intent of the legislature in the quoted language is to exempt from personal property taxation such farm products, as defined above, as are found in public warehouses in the State of Michigan on tax date, regardless of whether such products are destined for use inside or outside the State of Michigan,

---

[7] *Id,* pp 707, 708–709.

[8] "Goods located in a warehouse and designated in transit were given an exemption under subparagraph 12 and farm products *merely stored in a public warehouse,* as defined under subparagraph 12 were given a separate exemption under subparagraph 14" (emphasis supplied). Brief on Appeal—Appellee, p 9.

or whether such destination is unascertained at the time."

The majority did not disagree with that construction; it held that such an absolute exemption for storage of farm products in a public warehouse was not, when compared with the taxation of other personal property, violative of Const 1908, art 10, § 3, providing for uniformity in taxation.

This construction is also borne out by a comparison of paragraph 12th with paragraph 14th: paragraph 12th provides, at considerable length, regarding proof that products and goods are in fact in transit to destinations out of state, that reports be filed with the assessor when goods for which exemption has been claimed are shipped from the warehouse,[9] and that if such goods are not shipped out of state they shall be assessed upon the next succeeding or any subsequent assessment roll.[10]

[9] "Provided, That it shall be the duty of warehouses, docks or port facilities, individuals, copartnerships, corporations, owners, or those in possession of any tangible personal property, to report within 90 days after shipment of products, materials and/or goods in transit for which exemption, under this section, has been claimed or granted, the destination of shipments or parts of shipments and the cost value thereof, to the assessing officer * * * ." MCLA 211.9; MSA 7.9 (paragraph 12th).

[10] "Provided, That any property located in any public warehouse, dock or port facility on December 31 of each year, which is exempt from taxation under this provision but which is not shipped outside the state of Michigan pursuant to the particular tariff under which such transportation rate privilege was established, shall be assessed upon the next succeeding or any subsequent assessment roll by the assessing officer and taxed at the same rate of taxation as other taxable properties for the year or years for which such property was exempted, to the owner at the time of such omission; or if the owner or person entitled to possession of such products, materials and/or goods shall be a resident of or authorized to do business in Michigan and shall file with the assessing officer, with whom statements of taxable property are required to be filed, a statement under oath that said products, materials and/or goods are not for sale or use in, and will be shipped to a point outside the state of Michigan: Provided, That if any person, firm or corporation shall claim exemption by the filing of any such sworn statement, such person, firm or corporation

Comparable language does not appear in para-
graph 14th, nor is it incorporated from paragraph
12th by reference; paragraph 14th incorporates by
reference only paragraph 12's definition of the
term "public warehouse".

My colleague recognizes but argues against the
irrebuttability of the paragraph 14th presumption
that farm products stored in a public warehouse
are in transit and not subject to personal property
taxation.[11] Farm products need not, contrary to his

shall append to his statement of taxable property required to be filed
in the next year, or if no statement of taxable property is filed for the
next year, a sworn statement on a form required by the assessing
officer shall be filed showing a complete list of the property for which
such exemption was claimed with a statement of the manner of
shipment and of the point or points to which said products, materials
and/or goods were shipped from said public warehouse, dock or port
facility and any such products, materials and/or goods not shipped to
a point or points outside the state of Michigan shall be assessed upon
the next succeeding assessment roll, or on any subsequent assessment
roll by the assessing officer and taxed at the same rate of taxation as
other taxable properties for the year or years for which such property
was exempted, to the owner at the time of such omission * * * ." *Id.*

[11] My colleague writes:

"Goods actually designated as being in transit, located in a public
warehouse, are exempted from the tax; farm products are *presumed*
in transit if stored in a public warehouse. The purpose of the legisla-
tion is furthered by both of these provisions. The reason *why* the
Legislature chose to 'presume' farm goods so stored to be in transit is
open to conjecture; the reason may have been nothing more than a
recognition of the fact that such goods *are* very transitory, and as the
Court of Appeals majority stated in considering the constitutional
challenge to the statute:

" 'Differentiation on a case-by-case basis as to the "true purpose"
with which goods are stored in an owned or affiliated warehouse
would place an intolerable burden on the taxing authorities. Thus, it
appears that the Legislature resolved to apply a conclusive presump-
tion to products stored in each category of warehouses, without
regard to a factual inquiry as to individual circumstances.' 52 Mich
App 701.

"The purpose of the legislation is furthered also by excluding from
the exemption those farm products stored in a warehouse owned by a
consignor or consignee of the goods stored therein. The reason, simply
put, is that the presumption that such goods are 'in transit' is not
warranted in such circumstances. The goods will either not yet have
started in transit (if stored in consignor's warehouse) or will have
completed their transit (if stored in the consignee's warehouse). The

argument, be in transit to be within the "reason
for the exemption"; they are exempt under para-
graph 14th whether or not actually in transit. It
undermines the statutory differentiation between
goods that must be "in transit" to destinations out
of state to be entitled to exemption (paragraph
12th) and those that are irrebuttably presumed to
be in transit and specifically stated to be "not
subject to personal property taxation" (paragraph
14th) to deny an exemption under paragraph 14th
because the goods are not in fact in transit. There
was no need to enact a paragraph 14th exemption
for farm products actually in transit to destina-
tions out of state; they are exempt under para-
graph 12th.

### III

The terms "consignor" and "consignee" are not
defined in the act. In the context of paragraph
12th, providing at length regarding the determina-
tion of whether goods are in fact in transit in
interstate commerce, a "consignor" is "a shipper
or transmitter of goods", and a "consignee" is the
"person to whom the carrier is to deliver a ship-
ment of goods". Ballentine's Law Dictionary (3d
ed), p 251.[12] If goods are not shipped or placed in
transit there is no consignment, no consignor, no

---

reason for the exemption is not present in such a situation. This
statutory scheme is furthered only by including an owner of the goods
within the term 'consignor' and thus not exempted from taxes on the
farm products stored in its own warehouse" (emphasis in original).

In speaking of "a warehouse owned by the consignor or consignee of
the goods stored therein" my colleague necessarily defines consignee
as the person ultimately destined to receive the goods, but, at the
same time does not give consignor the complementary definition of
shipper or seller of the goods.

[12] Black's Law Dictionary (rev 4th ed), p 380, states that a consignor
is "[o]ne who sends or makes a consignment; a shipper of goods," and
a consignee is "[o]ne to whom a consignment is made. The person to
whom goods are shipped for sale."

consignee. In this case there was no shipment; the owner of the farm products was not a consignor.

The words "consignor" and "consignee" are terms of art in the law and should be given the legal meaning appropriate to the context. Definitions of these terms in nonlegal dictionaries set forth in my colleague's opinion are not persuasive.

## IV

There is no need to give the term "consignor" an expansive construction to enforce the policy of the proviso denying an exemption where the goods are stored in a consignor's or consignee's or an affiliate's or subsidiary's warehouse.

Both the purpose of the exemption and of the consignor/consignee qualification become apparent on consideration of the immunity from local taxation of goods moving in interstate commerce.

Goods in transit in interstate commerce are, by reason of the United States Constitution, immune from local taxation; "the States may not tax property in transit in interstate commerce". *Minnesota v Blasius,* 290 US 1, 9; 54 S Ct 34; 78 L Ed 131 (1933).[13]

Once the interstate journey commences "[t]he crucial question to be settled in determining whether personal property moving in interstate commerce is subject to local taxation is that of its continuity of transit."[14] Warehousing goods as "a convenient intermediate step in the process of getting them to their final destination"[15] does not break continuity of transit.

---

[13] Quoted in *Michigan Consolidated Gas Co v Austin Twp,* 373 Mich 123, 127; 128 NW2d 491 (1964).

[14] 15A Am Jur 2d, Commerce, § 68, p 408.

[15] *Id,* § 69, p 411.

The paragraph 12th exemption for goods in transit to destinations out of state manifestly is derived from the Federal Constitution and incorporates the concept that the continuity of transit requisite for exemption under the Federal Constitution is not broken by storage in a public warehouse.

Paragraph 12th is a legislative effort to provide administrative machinery for implementing Federal constitutional requirements and at the same time to guard against tax avoidance by the owners of goods located in a public warehouse they assert are in transit to out of state destinations that in fact are not.

To avoid extending the exemption beyond what is required by the Federal Constitution, the Legislature, in the provisos to paragraph 12th, established a number of safeguards against misuse of the federal exemption (see fns 9 and 10 and accompanying text, *supra).* The safeguard here in issue provides in effect that the interstate journey will not be deemed to have commenced if the goods are stored in a warehouse owned by the shipper (consignor) or its affiliate or subsidiary. Similarly, the interstate journey will be deemed to have ended if the warehouse is owned by the person ultimately destined to receive the goods (consignee) or its affiliate or subsidiary.

The exclusion of goods stored in a consignor's or consignee's or an affiliate's or subsidiary's warehouse guards against tax avoidance where, because of the relationship between the owner of the goods and the owner of the warehouse, interstate shipment ("transit") never in substance[16] began, or has ended.

---

[16] "The question is always one of substance, and in each case it is necessary to consider the particular occasion or purpose of the interruption during which the tax is sought to be levied. * * * The mere power of the owner to divert the shipment already started does not

The separate paragraph 14th exemption for farm products, in contrast, can be obtained by their mere placement in a public warehouse without regard to whether they are actually in transit. Where the exemption does not depend on whether the goods are actually in transit, it is of no significance whether interstate shipment has in substance begun or ended; the Legislature having determined that farm products not in transit, stored in a public warehouse, are exempt, there can be no misuse of the exemption or possible tax avoidance in placing farm products in the owner's or an affiliate's or subsidiary's warehouse. Defining the term "consignor" as a shipper of goods and "consignee" as the person destined to receive them is consonant both with the "in transit" context of paragraph 12th (where those terms appear) and the policy of the proviso.

## V

The Court of Appeals in defining "consignor" to include "delivery of goods for care or storage" deprives the term "consignee" of complementary meaning in the delivery-for-care-or-storage usage. The circuit judge said, "[i]f the words 'consignor' were to be given the meaning for which defendant contends, the corresponding word 'consignee' contained in the same statutory exclusion would be absolutely meaningless and make the exclusion meaningless".

If "consignor" does not mean a shipper of goods

take it out of interstate commerce if it appears 'that the journey has already begun in good faith and temporary interruption of the passage is reasonable and in furtherance of the intended transportation.' *Hughes Bros Timber Co v Minnesota*, 272 US 469, 476 [47 S Ct 170; 71 L Ed 359 (1926)]." *Minnesota v Blasius, supra*, p 10; quoted in *Michigan Consolidated Gas Co v Austin Twp, supra*.

and "consignee" the person ultimately destined to receive them,[17] then the owner of the public warehouse rather than the ultimate recipient becomes the consignee. Clearly, the Legislature could not have meant that the owner of the warehouse was the consignee for then *no warehouse* could qualify as a public warehouse. If one substitutes "warehouse owner, lessee or operator" for "consignee" then the exclusion would read "no portion of any premises owned or leased or operated by a * * * [warehouse owner, lessee or operator] * * * shall be deemed to be a public warehouse". The expansive meaning sought by the city does not work unless there can be a consignor without a consignee.

Moreover, unless consignee means the ultimate recipient, goods in transit to Michigan would not be deemed, by reason of the consignee qualification, to have ended their interstate journey if the warehouse in which they are located is owned by that person, an affiliate or subsidiary.

It would be necessary to give the term "consignor" different meanings under paragraph 12th and paragraph 14th to preserve the apparent objective of guarding against tax avoidance in the "entrustment for shipment/in transit" situation under paragraph 12th and at the same time to include the delivery-for-care-or-storage situation for the purpose of paragraph 14th.

## VI

Where "language is of doubtful meaning, a reasonable construction must be given, looking to the

[17] "Consignee", so defined, is consistent with the United States Supreme Court's construction of the Commerce Clause that goods in transit may be taxed only when they ultimately come to rest. *See Minnesota v Blasius*, 290 US 1, 9; 54 S Ct 34; 78 L Ed 131 (1933).

purpose subserved thereby. Its occasion and necessity are matters of judicial concern, and its purpose should be effected if possible". *Webster v Rotary Electric Steel Co,* 321 Mich 526, 531; 33 NW2d 69 (1948) (citations omitted).

"Few words have a 'content so intrinsic' that their meaning does not become doubtful in the context of a particular question. *Wyandotte Savings Bank v State Banking Commissioner,* 347 Mich 33, 40 [78 NW2d 612] (1956).

* * *

"We seek to ascertain and give effect to the intention of the Legislature. *Grand Rapids v Crocker,* 219 Mich 178, 182 [189 NW 221] (1922). But, as Karl Llewellyn observed, only infrequently 'a legislative intent with some concrete reality can be uncovered in circumstance or legislative history. For the rest, the court's work is not to *find,* any more than it is with case law. It is to *do,* responsibly, fittingly, intelligently, with and within the given frame.' (Emphasis by author.) Llewellyn, The Common Law Tradition, Deciding Appeals, p 382. Much the same point was made in language quoted approvingly in *Wyandotte Savings Bank v State Banking Commissioner, supra,* pp 40–41: ' " 'the intention is to be taken or presumed, according to what is consonant to reason and good discretion.' " ' 1 Kent's Commentaries (14th ed), p 462." *People v McFarlin,* 389 Mich 557, 563–565; 208 NW2d 504; 64 ALR3d 1274 (1973).

In construing a legislative enactment we are not at liberty to choose a construction that implements any rational purpose but, rather, must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used.

The consignor and consignee exclusion appears designed to guard against tax avoidance and extension of the paragraph 12th statutory exemption beyond the Federal constitutional exemption. It is

not within that purpose to apply this exclusion in paragraph 14th where taxpayers are in effect invited to avoid personal property taxation of farm products by placing them in a public warehouse.

Since the paragraph 14th exemption may be obtained by mere delivery for care or storage, the construction placed on the term consignor by the Court of Appeals ("delivery of goods for care or storage") does not implement a legislative purpose of preventing tax avoidance.

There are two essential questions where exemption is claimed under paragraph 12th: (1) Does the warehouse issue a schedule of rates for storage of such goods and warehouse receipts pursuant to 1909 PA 303, and (2) were the goods designated as in transit to destinations out of state.

The consignor/consignee qualification protects only against tax avoidance in respect to question (2). Defining consignor, as did the Court of Appeals, does not address any issue that might arise under question (1), the only question pertinent to a claim of exemption under paragraph 14th.[18]

The reason why the terms consignor/consignee have no apparent meaning in paragraph 14th is that their function is related to question (2) only, a question not pertinent under paragraph 14th. While the fact that those terms do not, under the taxpayer's construction, have an apparent meaning in paragraph 14th is reason to consider whether there is another or additional legislative purpose consistent with the usage of those terms that would give them meaning in paragraph 14th, it does not justify adoption of the city's proffered construction unless it is in accord with a perceived purpose and ordinary usage.

---

[18] Question (2) is not pertinent to paragraph 14th because farm products are conclusively deemed to be in transit.

The city contends that the legislative purpose was simply to prevent owners of goods or farm products who own or whose affiliates or subsidiaries own a warehouse from availing themselves of the paragraph 12th and paragraph 14th exemptions. If we were to adopt that purpose it would equate the word "owner" with the terms "consignor"/"consignee" and thereby attribute to them in both paragraphs 12th and 14th a meaning different from any known or reported usage. An owner may be a consignor or consignee, but need not be. A consignor or consignee may be an owner, but need not be. Neither the Court of Appeals nor my colleague equates "consignor"/"consignee" with "owner".

Absent reason to believe from the language chosen by the Legislature or from the context that there was a legislative purpose in paragraph 14th as in paragraph 12th (guarding against tax avoidance) to distinguish between storage in a stranger's public warehouse and storage in the owner's or an affiliate's or subsidiary's public warehouse, and, on the contrary, since the paragraph 14th exemption is obtainable upon mere delivery of the farm products to a public warehouse, we are not warranted in giving the term "consignor" an additional and separate meaning for the purpose of paragraph 14th only which would deny the exemption there provided because of a relationship between the owner of the warehouse and the owner of the goods who makes the delivery.

The Court of Appeals is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion without costs, a public question.

COLEMAN and FITZGERALD, JJ., concurred with LEVIN, J.

RYAN and BLAIR MOODY, JR., JJ., took no part in the decision of this case.

KAVANAGH, C. J. This is an appeal from summary judgment granted defendant City of Grand Rapids, denying plaintiff exemption from the personal property tax levied by the city upon certain farm products stored in a public warehouse. The Court of Appeals affirmed over dissent by Justice O'HARA. 52 Mich App 694; 218 NW2d 75 (1974). We affirm.

FACTS

The facts giving rise to this controversy are stipulated.

Plaintiff is a Michigan corporation engaged in the sale and distribution at wholesale of various food products, primarily in frozen state. Plaintiff is also the parent corporation of a wholly-owned subsidiary corporation, Triple Temp Storage Company, a public warehouse.

Plaintiff has paid the same schedule of fees charged to other customers of Triple Temp Storage Company. As a public warehouse facility, Triple Temp Storage Company has, in addition to plaintiff, a large and varied clientele. Plaintiff accounts for approximately 30% of Triple Temp's income.

Triple Temp Storage Company and plaintiff are separate corporate entities. A common wall separates and segregates the physical facilities occupied by the two businesses.

In the course of the conduct of its wholesale business, plaintiff regularly places farm products for storage in Triple Temp Storage Company. Upon the December 31, 1967, tax date, farm prod-

ucts in the amount of $197,967.80 were so stored in Triple Temp Storage Company. These farm products had neither been sold or invoiced to any customer, nor were they the property of any supplier of plaintiff.

The City of Grand Rapids assessed the farm products stored on the tax date in Triple Temp Storage Company as a part of plaintiff's 1968 personal property assessment. Plaintiff, claiming an exemption under MCLA 211.9; MSA 7.9, appealed this assessment to the Grand Rapids City Assessor where its claim of exemption was denied. Plaintiff paid its 1968 personal property tax under protest after its appeals to the Board of Review and the Michigan State Tax Commission failed.

In Count I of its complaint, plaintiff asserted that its property was exempted by § 9, paragraph 14th, of the General Property Tax Act, MCLA 211.9; MSA 7.9. Defendant's answer to this contention was that the exemption did not apply because by virtue of plaintiff's ownership of the warehouse, the facility could not be regarded as a public warehouse under § 9, paragraph 12th. Plaintiff maintained that the ownership provision had no application because its use did not amount to "consignment" as contemplated in paragraph 12th.

Both parties moved for summary judgment on Count I of the plaintiff's complaint. The circuit court denied plaintiff's motion and granted a summary judgment in favor of the defendant. Plaintiff thereupon, with leave of the circuit court, amended its complaint by deleting therefrom its original Count II and replaced it with a new Count II seeking a declaratory judgment that the language of paragraph 12th providing the exclusion from the exemption granted by paragraph 14th was unconstitutional as an act of arbitrary and

unreasonable classification for tax purposes and by reason of vagueness.

Defendant filed an amended responsive pleading and the parties each moved for summary judgment with respect to Count II of the plaintiff's amended complaint. Again, the circuit court denied plaintiff's motion and granted summary judgment to the defendant.

On December 29, 1972, plaintiff filed a claim of appeal with the Michigan Court of Appeals, and that Court, on April 29, 1974, sustained the Kent Circuit Court, O'Hara, J., dissenting. 52 Mich App 694; 218 NW2d 75 (1974).

Two issues are presented for our détermination:

1) Whether a corporation that stores its own farm products in a public warehouse, which it operates as a wholly-owned subsidiary, becomes by such act of storage a "consignor", thereby being denied the exemption from taxation afforded by MCLA 211.9; MSA 7.9?

2) Whether the exclusionary language of paragraph 12th of MCLA 211.9; MSA 7.9, to wit:

"Provided, That no portion of a public warehouse * * * leased to a tenant or no portion of any premises owned or leased or operated by a consignor or consignee or any affiliate or subsidiary of such consignor or consignee shall be deemed to be a public warehouse * * * ",

when incorporated by reference into paragraph 14th of the same statute, constitutes an unreasonable and arbitrary legislative act of classification for tax purposes, thereby rendering it unconstitutional?

I

MCLA 211.9; MSA 7.9 provides in relevant part:

"The following personal property shall be exempt from taxation, to wit:

\*   \*   \*

"Twelfth, All products, \* \* \* located in a public warehouse, \* \* \* on December 31 of each year, if such products, \* \* \* have been designated as in transit to destinations out of state pursuant to the published tariffs of any railroad or common carrier by the filing of the freight bill covering such products, \* \* \* with the agency designated by such tariffs, so as to entitle the shipper to transportation rate privileges: Provided, That to obtain exemption the owner shall be required to file a sworn statement with, and in the form required by the assessing officer, of the tax district in which the warehouse, \* \* \* is located, at a time between the tax day, December 31, and before closing of the assessment rolls by the assessing officer, describing the products, \* \* \* and reporting their cost and value as of December 31 of each year: Provided, That the status of persons, and products, \* \* \* for which exemption is requested shall be determined as of December 31, which shall be the tax day.

\*   \*   \*

"For the purpose of this section, a public warehouse, \* \* \* is defined as any warehouse, \* \* \* owned or operated by any \* \* \* corporation engaged in the business of storing products, \* \* \* for profit who issues a schedule of rates for storage of such products, \* \* \* and who issues warehouse receipts pursuant to the provisions of Act No. 303 of the Public Acts of 1909: *Provided, That no portion of a public warehouse, \* \* \* leased to a tenant or no portion of any premises owned or leased or operated by a consignor or consignee or any affiliate or subsidiary of such consignor or consignee shall be deemed to be a public warehouse,* \* \* \* .

\*   \*   \*

"Fourteenth, Farm products processed or otherwise, \* \* \* regularly placed in storage in a public warehouse, \* \* \* as defined in the twelfth subdivision of this section, shall, while so in storage be considered in transit and only temporarily at rest, and not subject to personal property taxation: Provided, That the assess-

ing officer shall be the determining authority as to what
constitutes, is defined as, or classified as, farm products
as used in this subdivision * * * ." (Emphasis added.)
(Subsequent amendments to the statute are not rele-
vant to this case, and the former numerical designa-
tions are used.)

It is stipulated that the food products stored by
plaintiff are within the classification of farm prod-
ucts exempted from taxation by paragraph 14th
and that plaintiff in fact operates a public ware-
house. It is also agreed that had the plaintiff
stored these same products in another public ware-
house, or if these products had been stored by
someone else in plaintiff's public warehouse, there
would have been no tax. The amount of the assess-
ment is unchallenged.

The defendant, however, denied the claim of
exemption contending that when the plaintiff
placed its farm products in storage, plaintiff be-
came a "consignor" within the meaning of the
exclusionary language of paragraph 12th, *supra.*
Because, argues the defendant, the public ware-
house is owned as a subsidiary corporation by the
plaintiff, and because the plaintiff is a "consignor"
of its farm products by virtue of their storage
therein, the plaintiff's warehouse ceases to be a
public warehouse as to plaintiff's products and
plaintiff loses the exemption from taxation granted
under paragraph 14th.

Unfortunately, the General Property Tax Act as
a whole, and § 9 specifically, does not contain any
definition of the term "consignor" to provide pre-
cise guidance as to what the Legislature intended
by its use of the term.

Plaintiff urges that we adopt the "mercantile"
definition of the term, which it contends is found

in the Uniform Commercial Code, MCLA 440.7102(1); MSA 19.7102(1), which provides:

> "(b) 'Consignee' means the person named in a bill to whom or to whose order the bill promises delivery.
>
> "(c) 'Consignor' means the person named in a bill as the person from whom the goods have been received for shipment."

Another "mercantile" definition was given in *Wasey v Whitcomb*, 167 Mich 58, 72; 132 NW 572 (1911):

> " 'To consign', in mercantile terms, is, ordinarily, to send or transfer goods to a merchant or factor for sale, and the consignee is consequently the person to whom they are consigned, shipped, or otherwise transmitted, and the term implies an agency."

These definitions, it is argued, do not support an interpretation that one in plaintiff's position, who merely deposits his unsold goods in a warehouse for storage, is a consignor. We are persuaded, however, that plaintiff's proffered definition is too narrow. This is not a case to determine rights in the typical commercial transaction between competing parties. We are not, for example, determining the rights of competing creditors of the consignor or consignee of goods delivered for sale, as would be covered under the Uniform Commercial Code.

While we agree that "consignor" may be correctly defined as plaintiff suggests, we regard a broader definition more appropriate in the present context. There are several accepted definitions of consignor ("consign" and "consignee") that would include one in plaintiff's position.

In *Power Transmission Equipment Corp v Beloit*

*Corp,* 55 Wis 2d 540, 544; 201 NW2d 13, 15–16 (1972), the Court stated:

> "In a mercantile use, which is applicable here, 'consignee' means one to whom a consignment may be made, a person to whom goods are shipped for sale, or one to whom a carrier may lawfully make delivery in accordance with its contract of carriage, or one to whom goods are consigned, shipped, or otherwise transmitted. Black's Law Dictionary (4th ed), p 380. The mercantile use of 'consignee' is not restricted to one who receives property for the purpose of sale. *Sturn v Boker,* 150 US 312, 326; 14 S Ct 99; 37 L Ed 1093 (1893)."

In *Ryttenberg v Schefer,* 131 F 313, 321 (SD NY, 1904), the Court said:

> "To 'consign' means to deliver into the care and control of another * * * ."

*Block v The Columbian Insurance Co,* 42 NY 393, 403 (1870), defined consignment as "the sending to or transferring or delivering of property by one into the possession of another".

Standard dictionary definitions also support defendant's position that consignment includes depositing for storage. *Webster's Third New International Dictionary, Unabridged (1966) Edition,* defines the word "consign" in part as:

> "3: *to give over to another's charge, custody or care:* Commission, Entrust * * * 4: to give, transfer, or deliver over by or as if by signing over esp. into the possession of another or into a lasting state * * * 6: to send or address to an agent in another place *to be cared for or sold* for the use of such agent * * * ." (Emphasis supplied.)

*The Random House Dictionary of the English*

*Language: Unabridged Edition* defines "consignee" as "the person or party to whom something, usually merchandise, is consigned". "Consignor" is defined as "a person or company that consigns goods, merchandise, etc." "Consign" is then defined, in part, as:

"1. to hand over or *deliver* formally; commit (often fol[lowed] by *to). 2. to transfer to another's custody or charge; entrust* * * * . 5. *Com.* a. to ship, as by common carrier, esp. for sale or custody. b. to address for such shipment." (Emphasis supplied.)

*Funk & Wagnall's New Standard Dictionary of the English Language* (1963), defines "consign", in part, as:

"1. To put under control of another; *entrust to the care of;* commit; * * * 2. To transfer; make over; * * * 3. Law & Com. To forward or deliver to another to be sold, disposed of, or care for, as merchandise or movable property * * * ." (Emphasis supplied.)

*The American Heritage Dictionary of the English Language* (1973), defines "consign" as:

"1. To give over to *the care of another; entrust* 2. To turn over permanently to another's charge or to a lasting condition; commit irrevocably. 3. To deliver (merchandise, for example) *for custody* or sale. 4. To set apart, as for a special use or purpose; assign." (Emphasis supplied.)

The Court of Appeals relied on a meaning of "consign" found in 15A CJS, Consign, p 585:

" 'In mercantile law, the term has a well-defined legal meaning, and signifies to deliver goods to a carrier to be transmitted to a designated factor or agent; *to deposit*

*with another to be sold, disposed of or called for, as*
*merchandise or movable property.*

" 'The term implies an agency, and, applied in a
commercial sense, means that the *property is commit-*
*ted or intrusted to the consignee for care or sale* and
does not by any express or fair implication mean sale
by one or purchase by another. It connotes delivery,
and carries decided implication that the property con-
signed is not the property of the consignee, the title
remaining in the consignor, the consignee being his
agent.' (Emphasis supplied.)" 52 Mich App 703.

When interpreting a statute, "[a]ll are agreed
that the primary [rule] is to ascertain and give
effect to the intention of the legislature". *Van*
*Antwerp v Michigan,* 334 Mich 593, 600; 55 NW2d
108 (1952).

Assistance in determining the legislative intent
in drafting the proviso considered here may be
gathered from a review of the legislative history of
§ 9 and of paragraphs 12th and 14th. The earliest
consequential ancestor to the present § 9 was 1939
PA 232. No exemption from personal property
taxation was therein granted to *any* agricultural
products, much less to those stored in a ware-
house.

1949 PA 261 next amended § 9, and did so by
adding a paragraph 13th, which provided that all
agricultural products, grown in Michigan, located
in a public warehouse were made exempt from
personal property taxation if such

"agricultural products have been designated as in
transit pursuant to the published tariffs of any common
carrier by the filing of the freight bill covering such
agricultural products with the agency designated by
such tariffs, so as to entitle the shipper to transporta-
tion rate privileges applicable only to through ship-
ments."

By 1952 PA 213, § 9 was again amended. Paragraph 13th of § 9, as it had been introduced into § 9 by 1949 PA 261, was amended by the addition of certain provisions. The definition of a public warehouse in paragraph 13th was amended to read as follows:

"For the purpose of this section, a public warehouse is defined as any warehouse, owned or operated by any person, firm or corporation engaged in the business of storing agricultural products, goods for hire and who shall annually issue a schedule of tariffs for the agricultural products which such warehouse is capable of storing."

It is to be noted that paragraph 13th, both as introduced by 1949 PA 261 and as amended by 1952 PA 213, provided that if the agricultural products exempted from taxation on the grounds of being "in transit" were not, in fact, shipped outside of the State of Michigan pursuant to the freight bill under which they had been warehoused, their exemption was lost and the products were considered as having been omitted from the tax rolls and reassessed.

Finally, by 1956 PA 206 paragraphs 12th and 14th of § 9, as relevant here, came into existence. The prior paragraph 13th became new paragraph 12th and the exemption from taxation previously granted only to agricultural products stored in a public warehouse was expanded to include "All products, materials and/or goods processed or otherwise and in whatever form" that were located in a public warehouse on tax day if such products, materials and/or goods had been designated "as in transit to destinations out of the state pursuant to the published tariffs of any railroad or common carrier by the filing of the freight bill" covering

such products so as to entitle the shipper to transportation rate privileges.

Farm products were removed from the new paragraph 12th (old paragraph 13th) by 1956 PA 206 and given separate treatment under a newly created paragraph 14th. Under the new paragraph 14th, farm products, to obtain exemption from personal property taxation, now needed only to be stored in a public warehouse and no longer was it required that they be designated as in transit pursuant to published tariffs, etc. No longer was it the case that if farm products were not, in fact, sent into the stream of interstate commerce they would lose their exemption from taxation. See *United States Cold Storage Corp v Detroit Board of Assessors,* 349 Mich 81; 84 NW2d 487 (1957).

A further change was added by 1956 PA 206 and this change occurred in the definition of a public warehouse provided by the new paragraph 12th (old paragraph 13th). A public warehouse was redefined as a warehouse that issued receipts pursuant to the provisions of 1909 PA 303. The act further provided, however, that a warehouse owned, leased or operated by a consignor or consignee, or by any affiliate or subsidiary of such consignor or consignee, was not to be considered as within the definition of a public warehouse.

This history indicates, as Justice O'HARA stated in his dissent in the Court of Appeals, that "the legislative intent of subsection 12 was to eliminate the danger of holding that Michigan was placing an unreasonable burden on interstate commerce * * * ". 52 Mich App 708.

Goods actually designated as being in transit, located in a public warehouse, are exempted from the tax; farm products are *presumed* in transit if stored in a public warehouse. The purpose of the

legislation is furthered by both of these provisions. The reason *why* the Legislature chose to "presume" farm goods so stored to be in transit is open to conjecture; the reason may have been nothing more than a recognition of the fact that such goods *are* very transitory, and as the Court of Appeals majority stated in considering the constitutional challenge to the statute:

"Differentiation on a case-by-case basis as to the 'true purpose' with which goods are stored in an owned or affiliated warehouse would place an intolerable burden on the taxing authorities. Thus, it appears that the Legislature resolved to apply a conclusive presumption to products stored in each category of warehouses, without regard to a factual inquiry as to individual circumstances." 52 Mich App 701.

The purpose of the legislation is furthered also by excluding from the exemption those farm products stored in a warehouse owned by a consignor or consignee of the goods stored therein. The reason, simply put, is that the presumption that such goods are "in transit" is not warranted in such circumstances. The goods will either not yet have started in transit (if stored in consignor's warehouse) or will have completed their transit (if stored in the consignee's warehouse). The reason for the exemption is not present in such a situation. This statutory scheme is furthered only by including an owner of the goods stored within the term "consignor" and thus not exempted from taxes on the farm products stored in its own warehouse.

To interpret the term "consignor" to exclude an owner of such goods would frustrate the entire purpose of the statute. The language must be read in the light of the general purpose sought to be

accomplished. *Ballinger v Smith,* 328 Mich 23; 42 NW2d 49 (1950).

We are also assisted in our determination by the oft-repeated rule of statutory construction that imposition provisions of a taxing statute are construed in favor of the taxpayer, while exemption provisions must be strictly construed in favor of the taxing agency. *Evanston YMCA Camp v State Tax Commission,* 369 Mich 1; 118 NW2d 818 (1962).

An intention on the part of the Legislature to grant an exemption from taxation may not be implied from language which will admit of any other reasonable construction. " 'In other words, since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it.' " *Detroit v Detroit Commercial College,* 322 Mich 142, 149; 33 NW2d 737 (1948), citing 2 Cooley on Taxation (4th ed), § 672, p 1403.

Considering, as we must, the overall statutory scheme involved, the several acceptable definitions of "consignor", and the rule of strict construction against the taxpayer of exemption provisions, we hold that an owner of farm products that stores those products in a public warehouse which it owns and operates as a wholly-owned subsidiary is a "consignor" of those goods, and is thereby denied the exemption from taxation afforded by MCLA 211.9; MSA 7.9.

II

Plaintiff contends that the exclusionary lan-

guage of paragraph 12th, when incorporated into paragraph 14th, constitutes an unreasonable and arbitrary classification for tax purposes, and is, therefore, unconstitutional.

Plaintiff agrees that in the case of paragraph 12th, the exclusion from the definition of public warehouse of a warehouse owned by a consignor constitutes a reasonable basis for discrimination, the distinction being whether or not the goods involved are in interstate commerce. The argument is that when dealing with paragraph 14th, where any distinction between inter- and intrastate commerce is immaterial to the grant of an exemption, the exclusion of a warehouse owned by a consignor from the definition of public warehouse becomes an act of classification based solely on considerations of ownership. Those who store farm products in a public warehouse, and also own that warehouse, are treated differently for tax purposes from others who store identical goods in the same warehouse. This, it is argued, is not a differentiation between classes of property, but rather it is the nature of the owner which determines whether or not there is an exemption, and that is unconstitutional as violative of Const 1963, art 9, § 3, and the equal protection clauses of the Fourteenth Amendment to the United States Constitution and art 1, § 2, of the Michigan Constitution.

In *United States Cold Storage Corp v Detroit Board of Assessors,* 349 Mich 81; 84 NW2d 487 (1957), paragraph 14th of this statute, which exempted farm products stored in a public warehouse from taxation due to the presumption that they are "in transit" was challenged as a violation of Const 1908, art 10, § 3, which provided for "a uniform rule of taxation" (now Const 1963, art 9,

§ 3). This Court upheld the statute, concluding "that the act in question was passed by the legislature to encourage the flow of commerce into Michigan, and that the act is constitutional". 349 Mich 93.

"In *Citizens' Telephone Company of Grand Rapids v Fuller,* 229 US 322; 33 S Ct 833; 57 L Ed 1206 [1913], the court had under discussion 1909 PA 49, which exempted telegraph and telephone companies whose gross receipts within Michigan did not exceed $500 during the period of a year. It was there said (pp 328, 329, 331, 332):

" 'In Michigan the legislature has the power of prescribing the subjects of taxation and exemption, notwithstanding the Constitution of the State requires the legislature to provide a uniform rule of taxation, except on property paying specific taxes. *People, ex rel St Mary's Falls Ship Canal Co v Auditor General,* 7 Mich 84 [1859]; *Chippewa County Supervisors v Auditor General,* 65 Mich 408 [32 NW 651 (1887)]; *National Loan & Investment Co v Detroit,* 136 Mich 451 [99 NW 380 (1904)]. The power of exemption would seem to imply the power of discrimination, and in taxation, as in other matters of legislation, classification is within the competency of the legislature. We said in *American Sugar Refining Co v Louisiana,* 179 US 89, 92; 21 S Ct 43; 45 L Ed 102, 103 [1900], that from time out of mind it has been the policy of this government to classify for the purpose of taxation, and a discrimination was supported between taxation of producers and manufacturers of products; and yet in *Billings v Illinois,* 188 US 97, 102; 23 S Ct 272; 47 L Ed 400, 403 [1903], we compared the rule with that in *Connolly v Union Sewer Pipe Co,* 184 US 540; 22 S Ct 431; 46 L Ed 679 [1902], where a distinction between buyers of products and the producers of them was held an illegal discrimination.

" 'It may therefore be said that in taxation there is a broader power of classification than in some other exercises of legislation. There is certainly as great a power, and the rule appellant urges cannot be adopted.

It is inconsistent with the principle of classification and the cases which have explained the principle and the range of its legal exercise. * * *

" 'They illustrate the power of the legislature of the State over the subjects of taxation and the range of discrimination which may be exercised in classifying those subjects when not obviously exercised in a spirit of prejudice and favoritism. *Cook v Marshall County, Iowa,* 196 US 261, 274; 25 S Ct 233; 49 L Ed 471, 474 [1905]; *Missouri v Dockery,* 191 US 165; 24 S Ct 53; 48 L Ed 133; 63 LRA 571 [1903]. The cases decided subsequent to the decision in *Bell's Gap R Co v Pennsylvania* (134 US 232, 237; 10 S Ct 533; 33 L Ed 892, 895 [1890]) have applied its principle to many varying instances. Granting the power of classification, we must grant government the right to select the differences upon which the classification shall be based, and they need not be great or conspicuous. *Keeney v Comptroller of the State of New York,* 222 US 525, 536; 32 S Ct 105; 56 L Ed 299, 305; 38 LRA NS 1139 [1912]. The State is not bound by any rigid equality. This is the rule;—its limitation is that it must not be exercised in "clear and hostile discriminations between particular persons and classes." See *Quong Wing v Kirkendall,* 223 US 59, 62, 63; 32 S Ct 192; 56 L Ed 350 [1912]. Thus defined and thus limited, it is a vital principle, giving to government freedom to meet its exigencies, not binding its action by rigid formulas, but apportioning its burdens, and permitting it to make those "discriminations which the best interests of society require."

" 'We think the statute under review is within the rule. It is not arbitrary. It has a reasonable basis, resting on a real distinction.'

"We do not find that the enacted legislation came into existence in a 'spirit of prejudice and favoritism.' The question of the economic advantages to be obtained by exemptions is a matter pertaining to the legislature." 349 Mich 91–92.

The principles stated in *United States Cold Storage, supra,* are equally applicable here.

The distinction is between those farm products

stored in a public warehouse and in a private warehouse.

To be constitutional, "[t]he classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation". *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 671; 232 NW2d 636 (1975).

A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike". *FS Royster Guano Co v Virginia,* 253 US 412, 415; 40 S Ct 560; 64 L Ed 989 (1920).

"In determining what is within legislative discretion and what is arbitrary, regard must be had for the particular subject of the State legislation. There must be a relation between the classification and the purposes of the act in which it is found." *Fox v Employment Security Commission,* 379 Mich 579, 588; 153 NW2d 644 (1967). (T. M. Kavanagh, J., Justices Black, Souris and Brennan concurring).

When the overall history and purpose of the statute being considered are examined, it becomes clear that the very purpose for granting the exemption, *i.e.* to avoid offending the interstate commerce provisions of the United States Constitution, would be carried to a self-defeating extreme if goods stored in a warehouse owned by the person so storing them were also exempted. The presumption of "in transit" is not present in such circumstances, as it is when the goods are stored in another's public warehouse.

No one contends that all "farm products" stored in any warehouse must be treated as "in transit"

and thus not taxable as a matter of constitutional law.

The United States Supreme Court, in *Kahn v Shevin,* 416 US 351, 355–356; 94 S Ct 1734; 40 L Ed 2d 189 (1974), when faced with an equal protection challenge to a state statute granting widows an annual $500 property tax exemption, held that

> " '[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.' *Lehnhausen v Lake Shore Auto Parts Co,* 410 US 356, 359 [93 S Ct 1001; 35 L Ed 2d 351 (1973)].
>
> "A state tax law is not arbitrary although it 'discriminate[s] in favor of a certain class * * * if the discrimination is founded upon a reasonable distinction, or difference in state policy,' not in conflict with the Federal Constitution. *Allied Stores v Bowers,* 358 US 522, 528 [79 S Ct 437; 3 L Ed 2d 480 (1959)]. This principle has weathered nearly a century of Supreme Court adjudication, and it applies here as well. The statute before us is well within those limits."

We cannot say that the difference in treatment of farm products stored in a public warehouse and those same products stored in a private warehouse, for purposes of exemption from personal property tax per MCLA 211.9; MSA 7.9, is unreasonable and bears no reasonable relation to the object of the legislation.

The statute does not deny plaintiff equal protection of the laws, nor does it violate the uniformity requirement of Const 1963, art 1, § 2.

The Court of Appeals is affirmed. Costs to defendant.

WILLIAMS, J., concurred with KAVANAGH, C. J.