*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. M. M. TANSLEY, Minor.

UNPUBLISHED
April 21, 2022

No. 357918
Macomb Circuit Court
Family Division
LC No. 2018-000329-NA

Before: BORRELLO, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Respondent[1] appeals as of right the order terminating his parental rights to the minor child, AT, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and (j) (reasonable likelihood child will be harmed if returned to parent's home). For the reasons set forth in this opinion we affirm.

## I. BACKGROUND

On June 20, 2018, the minor child was in the park near a river while the parents were extremely intoxicated. When the police arrived, respondent took the minor child into his car and fled. He was pursued by the police while driving recklessly and arrested for Operating While Impaired. The minor child was in the vehicle while respondent was driving under the influence and attempting to flee from the police. Following his arrest, respondent was transported to the hospital with a blood alcohol content of .23.

As a result of the June 20, 2018 incident, respondent pled guilty to a number of criminal charges and was incarcerated. Mother executed a power of attorney to a family member, who began caring for the minor child. The trial court took jurisdiction of the minor child after the power of attorney expired, and respondent-mother could not be located.

---

[1] The trial court also terminated mother's parental rights in the same proceedings; however, mother is not a party to this appeal.

The Department of Health and Human Services (DHHS) presented respondent with a case service and treatment plan. The treatment plan required respondent to participate in and complete a number of services including: a mental health treatment, substance abuse treatment, and parenting classes. Respondent was also required to find appropriate housing and obtain employment. During this period, respondent repeatedly failed to comply with the services and treatment plan, was arrested and incarcerated for much of the time and his visits to the minor child caused the minor child to request that respondent no longer visit, culminating in a decision to terminate respondent's parental rights.

The record reveals that the trial court conducted several hearings to determine whether statutory grounds existed to terminate respondent's parental rights. At the last hearing, on June 30, 2021, three years from the original date of these proceedings, the trial court found statutory grounds existed under MCL 712A.19b(3)(c)(*i*) and (j), holding:

> As to [respondent], again[,] however well-intentioned he may be or even loving towards his daughter, I have to review all the evidence in this case, the good and the bad, and its totality for him as well.
>
> [Respondent's] lack of insight and unresolved substance abuse concerns do, in fact, present clear and convincing evidence that there would be a reasonable likelihood that the child would be harmed if returned to his home this date. His actions in driving under the influence with his child in the car, fleeing from police, and then not seeing that his child was at risk of harm when testifying at this trial nor in demonstrating a resolution of substance abuse issues demonstrates to the court that this ground is met at to [respondent].
>
> As this very moment in time, I believe clear and convincing evidence that there is a reasonable likelihood that the conduct or capacity of [respondent] would cause the child to be harmed.
>
> Again, he does not . . .presently have suitable housing to return the child into. He admits that neither he nor mother are really prepared to bring the child home right now.
>
> And his substance abuse problem remains untreated to this day. That's over two and a half years past disposition and the adoption of the [treatment plan]. He will not even take drug screens completing only two out of 80 required screens. There is no indication that he legitimately treated and resolved domestic violence issues and he presently has a warrant for domestic violence against mother and needs [to] turn himself in on that charge.
>
> All of these issues would place the child at reasonable likelihood for risk of harm if returned to [respondent-]father's care. And the court, again, cites, *In re Kaczkowski*, [325 Mich App 69; 924 NW2d 1 (2018)] and, *In re White*, [303 Mich App 701; 846 NW2d 61 (2014)] that a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home.

The court, therefore, finds that ground (j) is met as to [respondent-]father by clear and convincing evidence.

Following these findings, the trial court next turned to whether termination was in the minor child's best interests. The trial court first stated its consideration of the minor child's best interests would be treated as a "separate hearing[]." It then went on to recite respondent's appellate rights, before asking the parties whether they had "any additional witnesses or evidence to present at this time[.]" The assistant prosecutor stated she did not have any additional witnesses but asked the trial court to "rely on the significant amount of testimony and evidence that was provided to the court at . . . [the] recent termination of parental rights trial." After conferring with respondent in a Zoom breakout room, respondent's attorney stated she did not have any additional witnesses and asked the trial court to rely on respondent's testimony when considering the minor child's best interests. The trial court's findings as to whether termination of parental rights was in the minor child's best interests was as follows:

> So, the court has weighed all of these [best-interest] factors and . . . the court finds the petitioner has indeed met its burden of proof by a preponderance standard that termination of parental rights as to both [mother] and [respondent] is in [the minor child's] best interest[s].

> A summary of some of the relative [sic] factors that the court has found and considered are as follows. And the court in addition, of course, adopts the finding made and placed on the record of its opinion on statutory grounds.

> The court finds that the child thus has no bond with . . . [respondent]. Neither parent has seen the child in a lengthy time due to the need to have suspended the parenting time for both parents. This child would not personally look to either parent for support, guidance, for comfort that . . . you could define a bond as some of those things. And this child would not look to either parent for any of that. And I don't believe there's a realistic prospect to reunify the child with either parent or both parents.

> The parents are not able to appropriately care for the child presently nor, as stated previously, in a reasonably foreseeable timeframe in the future. This includes a lack of proper housing in more than two and a half years and, again, all the findings of concern noted in the court's previous opinion on statutory grounds.

> The court also notes petitioner's exhibit that . . . was admitted which is the . . . child's trauma assessment. I'd just like to quote a little part of that, is that [the minor child's] continued placement in foster care exacerbates her risk for continued developmental and behavioral issues. She's an individual at considerable risk for increased schooling, peer, and vocational problems unless provided with the appropriate supports and programming. And I could go on and we all have the exhibit[,] but her in foster care any longer is not in her best interest at this point, and I can't remove by her today at this point. And, so, it is in her best interest to terminate parental rights for that . . . consideration alone.

And, again, this finding is based upon a failure to substantially . . . comply with the treatment plan even after a prolonged period of time. The failure to fix the issues that brought the child into care and in the parenting ability of both parents, I believe, is still impaired as it was when the child entered care.

And it's not to say that there can't be some hope or improvement for the parents in the future, and I hope that there is but within the constraints of this case in a reasonable time in what's best for this child. And, again, I can't stress enough . . . this is a proceeding centered on the best interest of the child. And from all of those considerations I can reach no other conclusion.

From the child's view of the world, I think it would be traumatic to attempt to further reunify her with either or both birth parents because I do not believe that the parents are able to care for her at present nor in a reasonable time.

And reintroduction to the expected subsequent failure to reunify I believe would cause additional harm to the child. The child needs to have some sense of permanent belonging. And termination of parental rights with adoption would provide that for her rather than additional time spent at which I would think would expect to produce the same track record that we have seen in the past.

And on the other hand, contrary, the child is placed in a loving, clean, safe, stable, substance-free home where all her needs are met and will continue to be met for as long as needed.

With an additional identified party who is willing, it has been stated, is willing to adopt the child. That identified party is well-known to the foster parents' home.

As stated previously, the child court may consider a parent's history of domestic violence, their compliance with his or her case service plan, the parents' visitation history with the child, the child's well-being while in care where she's at now, and the possibility of adoption.

And all of those factors weigh in support of termination of both parents' parental rights. And that finding need be met by just a preponderance standard, and I think it has and that's why I'm finding.

Therefore, based upon all the court's prior findings, the record in this case, and this opinion, the court finds the termination of parental rights of . . .[respondent] is in the best interest of the child . . .

This appeal ensued.

## II. ANALYSIS

On appeal, respondent argues the trial court was obliged to receive "some evidence . . . establish[ing] the best interest of the child." According to respondent, the trial court erred when it

combined the hearing on statutory grounds with the hearing on best interests, resulting in "essentially . . . no best interest phase."

To preserve an issue for appellate review, it must be raised before the trial court. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Respondent argues that the trial court reversibly erred when it failed to receive evidence as to the minor child's best interests at a separate best-interest hearing. However, respondent did not object to the trial court's processes in the trial court. Therefore, this issue is unpreserved for appellate review. *Id*.

"Constitutional questions and issues of statutory interpretation, as well as family division procedure under the court rules, are reviewed de novo." *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). Because respondent did not preserve this argument in the trial court, our review is for plain error. *In re Mota*, 3134 Mich App 300, 311; 964 NW2d 881 (2020). To prevail under the plain error standard, "[t]he respondents must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected their substantial rights." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). An error affects substantial rights when it, "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id*. (quotation marks and citation omitted).

In *In Re Diehl*, 329 Mich App 671, 687-688; 944 NW2d 180 (2019), this Court stated:

. . . [T]his Court reviews de novo the interpretation of statutes and court rules. *Kerr*, 323 Mich App at 411. "The rules of statutory construction apply equally to court rules." *In re Lee*, 282 Mich App 90, 93; 761 NW2d 432 (2009). "Construction begins by considering the plain language of the statute or court rule in order to ascertain its meaning." *Patel v Patel*, 324 Mich App 631, 639-640; 922 N.W.2d 647 (2018). "[U]nambiguous language is given its plain meaning and is enforced as written." *Id.* at 640 (quotation marks and citation omitted). "A provision in a statute is ambiguous only if it irreconcilably conflicts with another provision or it is equally susceptible to more than a single meaning." *Lee*, 282 Mich App at 93. "In construing a legislative enactment we are not at liberty to choose a construction that implements any rational purpose but, rather, must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used." *Frost-Pack Distrib Co v Grand Rapids*, 399 Mich 664, 683; 252 NW2d 747 (1977).

MCL 712A.19b(5) provides: "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." See also *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014) ("Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests.") At the beginning of the June 30, 2021 termination hearing, the trial court noted its findings regarding whether statutory grounds existed to terminate respondent's parental rights. After reaching its conclusions on this basis, the trial court turned to the question of the minor child's best interests, stating, "The court having found statutory grounds met as to . . . [respondent] it will now hold a best interest hearing on whether to terminate the parental rights of either or both parents." As

previously stated, the trial court then asked respondent whether he had any "additional testimony or evidence that you wish to present[.]" To this question his attorney replied: "No, your Honor. My client will not be testifying in this portion of the trial. I only have a statement regarding best interest." On appeal, respondent argues the trial court erred when it considered the minor child's best interests at this same hearing.

The record makes clear that respondent failed to object to the trial court's proceeding directly to the best-interest phase. Furthermore, respondent, through counsel, stated he would not present any additional testimony or evidence. "Respondent may not assign as error on appeal something that [he] deemed proper in the lower court because allowing [him] to do so would permit respondent to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

Next, respondent argues the trial court was somehow required to conduct a separate best-interest hearing. This argument conflicts with a plain reading of the statute. The statute plainly reads that termination of parental rights is proper if "the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests . . . ." MCL 712A.19b(5). We discern within the plain text no *requirement* that a trial court conduct a separate best-interest hearing, only that the trial court make a finding of best interests. Accordingly, respondent is not entitled to relief on this issue.

Respondent also argues that the trial court violated his constitutional rights, stating, "[f]airness demands that [respondent] be afforded minimal procedural protections before the State can burden a fundamental right."

Our review of the record leads us to conclude that the trial court afforded to respondent "minimal procedural protections." For example, the trial court clearly demarcated the statutory grounds phase from the best-interest phase, stating at nearly all the termination hearings it would make a finding as to statutory grounds before proceeding to the question of best interests. Further, at the June 30, 2021 termination hearing, the trial court read respondent his appellate rights after its findings as to statutory grounds; but before making a best-interest finding. Finally, before beginning its best-interest deliberations, the trial court allowed respondent to consult privately with his attorney in a Zoom breakout room. From that meeting respondent via counsel informed the trial court he had no additional testimony or witnesses. We cannot glean from this record any evidence of a deprivation of due process right; hence, we discern no plain constitutional error from which reversal is warranted.

Respondent argues the trial court erred in finding termination of parental rights was in the minor child's best interests because "[t]here was no evidence presented at the trial that termination was clearly in the best interest of the child."

"The clear error standard controls our review of both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted); MCR 3.997(K). "A trial court's decision is clearly erroneous 'if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re*

*Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012) (brackets omitted), quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Respondent incorrectly asserts there was "no evidence presented" showing termination was in minor child's best interests. The trial court found termination was in the minor child's best interests based on the reasoning quoted above. Examples are: (1) the minor child had no bond with respondent; (2) respondent showed an inability to provide appropriate housing; (3) the risk factors associated with the minor child's supported continued placement in foster care; (4) respondent failed to comply with the treatment plan; and (5) the minor child had present stability. All these findings were supported by evidence from the record.

The record further reveals that the minor child had no bond whatsoever with respondent, in fact, quite the contrary. The trial court heard testimony that the minor child showed indifference toward respondent by never asking about him. The minor child did not call respondent "dad;" she called him "the creepy guy with the long black beard." In addition, there was evidence suggesting the minor child was fearful of respondent, as evidenced by her nightmares after parenting-time visits. There was also evidence that during a visit, the minor child "ran out of the room screaming." There was testimony from the foster care caseworkers stating respondent failed almost every aspect of his treatment plan—he never obtained housing, employment, or completed mental health or substance abuse therapy. He continued to commit acts of domestic violence. In 2019, respondent was arrested and incarcerated for driving while intoxicated *on his way* to parenting classes. Most telling, however, was respondent's own testimony stating he was not "prepared to bring [the minor child] home." From this record, it is clear that the trial court did not err in finding that termination was in the minor child's best interests. Accordingly, respondent is not entitled to relief.

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Deborah A. Servitto